**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**

| | |
|---|---|
| **SHANE DAVIS**, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**SOUTHERN GRAPHICS, INC.** d/b/a **SGS & CO.**,<br><br>Defendant. | Case No.: 3:25-cv-563 |
| **LINDA GREENWOOD**, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**SOUTHERN GRAPHICS, INC.** d/b/a **SGS & CO,**<br><br>Defendant. | Case No. 3:25-cv-610 |
| **JAMES PALMER**, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**SOUTHERN GRAPHICS, INC.** d/b/a **SGS & CO,**<br><br>Defendant. | Case No. 3:25-cv-613 |

| | |
|---|---|
| **RICHARD BUST**, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**SOUTHERN GRAPHICS, INC.** d/b/a **SGS & CO,**<br><br>Defendant. | Case No. 3:25-cv-617 |
| **DARA ROJOWSKI**, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**SOUTHERN GRAPHICS, INC.** d/b/a **SGS & CO,**<br><br>Defendant. | Case No. 3:25-cv-657 |

**PLAINTIFFS' UNOPPOSED MOTION TO CONSOLIDATE RELATED CASES AND APPOINT INTERIM CO-LEAD COUNSEL**

## I. INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 42(a), Plaintiffs in the above-captioned related actions (collectively, "Plaintiffs") respectfully move for an order consolidating the five related proposed class actions ("Related Cases") currently pending in the Western District of Kentucky:

1. *Davis v. Southern Graphics, Inc.*, Case No. 3:25-cv-563 ("*Davis*");
2. *Greenwood v. Southern Graphics, Inc.*, Case No. 3:25-cv-610 ("*Greenwood*");
3. *Palmer v. Southern Graphics, Inc.*, Case No. 3:25-cv-613 ("*Palmer*");
4. *Bust v. Southern Graphics, Inc.*, Case No. 3:25-cv-617 ("*Bust*"); and
5. *Rojowski v. Southern Graphics, Inc.*, Case No. 3:25-cv-657 ("*Rojowski*").

All Related Cases arise from the same data breach (the "Data Breach") experienced by Defendant Southern Graphics, Inc. ("Defendant"). Critically, each Related Case alleges the Data Breach was caused by Defendant's failure to use reasonable data security measures, which inflicted common injuries on Plaintiffs and Class Members. Given the substantial similarities, allowing the Related Cases to proceed as separate cases would unnecessarily burden judicial resources. Thus, consolidating the Related Cases at this early stage is in the best interest of the parties, Class Members, and the Court. *See* Fed. R. Civ. P. 23(g), 42(a).

Plaintiffs further request the Court appoint Mariya Weekes of Milberg Coleman Bryson Phillips Grossman, PLLC; Jeff Ostrow of Kopelowitz Ostrow, P.A.; William B. Federman of Federman & Sherwood; Raina Borrelli of Strauss Borrelli PLLC; and Grayson Wells of Stranch, Jennings & Garvey, PLLC ("Proposed Interim Co-Lead Counsel") as interim class counsel pursuant to Rule 23(g). Proposed Interim Co-Lead Counsel are nationally recognized as leaders in data privacy litigation and have litigated dozens of data breach class actions. Proposed Interim Co-Lead Counsel have been intimately involved in investigating, prosecuting, and coordinating this

action, and their firms have the resources to litigate it through trial. Thus, their appointment will best serve the putative Class while conserving judicial resources. Defendant does not oppose this motion or otherwise take a position on Plaintiffs' leadership.

## II. BACKGROUND AND PROCEDURAL HISTORY

On or around November 14, 2024, an unauthorized actor unlawfully accessed information technology systems belonging to Defendant. Plaintiffs allege in each Related Case that the Data Breach exposed the personally identifiable information ("PII") and protected health information ("PHI", and collectively, "Private Information") of Plaintiffs and Class Members (i.e., the Class).

Defendant began notifying Plaintiffs and Class Members about the Data Breach in or around September 2025. As a result, beginning on September 4, 2025, the Related Cases were filed against Defendant, each on behalf of the same putative Class of Data Breach victims. The Related Cases assert overlapping claims for relief, including claims for negligence, negligence *per se*, breach of implied contract, breach of fiduciary duty, unjust enrichment, and violation of the Kentucky Consumer Protection Act, Ky. Rev. Stat. § 367.110, *et seq*.

## III. THE COURT SHOULD CONSOLIDATE THE ACTIONS

Federal Rule of Civil Procedure 42(a) allows for case consolidation where "common questions of law and fact predominate and . . . considerations of judicial economy would be served by consolidation." *Hiley v. CorrectCare Integrated Health, Inc*., 2023 U.S. Dist. LEXIS 29145, at *6 (E.D. Ky. Feb. 22, 2023) (consolidating related cases arising from same data breach); *see also Keil v. Bearden*, 2021 WL 7708479, at *1 (W.D. Mo. Nov. 17, 2021) (citations omitted) ("Consolidation is usually favored when two cases involve 'common parties, overlapping legal issues, and related factual scenarios.'"). Applying this standard, consolidation is warranted.

**A. The Related Cases Share Common Questions of Law and Fact.**

Consolidation of the Related Cases is proper because they indisputably share "common questions of law or fact," and consolidation will serve judicial convenience and reduce cost and delay. All Related Cases arise from the same Data Breach, are pleaded as class actions, and involve substantially identical complaints.

The Related Cases involve the multiple common questions of law, including but not limited to (a) whether Defendant breached its duty of care to Plaintiffs and Class Members when it failed to implement reasonable data security measures; (b) whether Defendant's failures allowed cybercriminals to gain unauthorized access to Defendant's data systems and steal the Private Information of Plaintiffs and Class Members; and (c) whether and how Plaintiffs were harmed by Defendant's conduct related to the Data Breach. These common questions of fact and law predominate and favor consolidation.

Indeed, courts consistently find data breach class actions like the Related Cases are particularly appropriate for consolidation. *See, e.g.*, *Stinson v. Yum! Brands, Inc.*, No. 3:23-cv-00183-DJH, 2023 U.S. Dist. LEXIS 227601, at *9 (W.D. Ky. Nov. 13, 2023) ("The complaints are based on the same alleged data breach, allege the same negligent conduct of the same defendant, and request the same or similar remedies. These facts establish a sufficient showing for a prima facie case of consolidation under Federal Rule of Civil Procedure 42."); *Guy v. Convergent Outsourcing, Inc.*, No. 2:22-cv-01558 (W.D. Wash. Dec. 13, 2022), ECF No. 16 (ordering consolidation of four actions arising from a data breach); *Kostka v. Dickey's Barbecue Rests., Inc.*, No. 3:20-cv-3424 (N.D. Tex. Mar. 19, 2021), ECF No. 37 (ordering consolidation of three actions stemming from the same data breach). This Court should do the same.

**B. Consolidation Promotes Judicial Economy and Avoids Unnecessary Cost and Delay.**

In determining whether to consolidate cases, courts typically evaluate the burden on parties, witnesses, and available judicial resources posed by multiple lawsuits and the risk of inconsistent adjudications of common factual and legal issues were the lawsuits to be tried separately. Consolidation is granted when doing so will streamline and simplify discovery, pretrial motions (including class certification), and administrative management, as well as generally prevent waste, confusion, or delay that would inevitably arise from separate prosecution of related matters. *See, e.g. Bank of Montreal v. Eagle Associates*, 117 F.R.D. 530, 533 (S.D.N.Y. 1987) ("One of the primary objectives of consolidation is to prevent separate actions from producing conflicting results."); *see also Cornell v. Soundgarden,* No. C20-1218, 2021 WL 1663924, at *4 (W.D. Wash. Apr. 26, 2021) (considering judicial efficiency of resolving similar factual and legal issues in a consolidated action); *Ocean Ships, Inc. v. Stiles*, No. 00 Civ. 5469, 2003 WL 22741457, at *3 (S.D.N. Y. 2003) ("Consolidating the two cases would also promote judicial efficiency by reducing discovery costs.").

Here, the Related Cases are in the initial stages of litigation, and consolidation will reduce delay, confusion, and duplication of discovery, motion practice, and depositions. Plaintiffs' counsel anticipates that the Related Cases will involve substantially the same discovery. Thus, consolidating these two Related Cases will eliminate duplicative judicial work, prevent duplicative discovery and depositions, and avoid conflicting outcomes. All Plaintiffs agree that consolidation will promote efficiency for the parties, who would otherwise needlessly incur legal fees and costs. All Related Cases were filed in September 2025 (placing these lawsuits in nearly identical positions in the life cycle of a case). Moreover, Defendant has not responded to the complaint in any Related Case. Therefore, there is no possibility of prejudice to Defendant that would outweigh

the improved efficiency of consolidation. *See Bank of Montreal*, 117 F.R.D at 534 (granting consolidation where any prejudices of consolidation were "merely speculative and not grounded in fact" and did not outweigh the interests of judicial economy).

**C. Future Filed Related Cases Should be Consolidated.**

The Court should consolidate the Related Cases because they all involve common questions of law and fact, as detailed above, and subjecting the cases to Plaintiffs' proposed class leadership structure will facilitate the efficient prosecution of this litigation. Plaintiffs also respectfully request that the Court consolidate all subsequently filed cases that arise from Defendant's Data Breach. Plaintiffs also respectfully request that the Court consolidate all subsequently filed cases that arise from Defendant's Data Breach. Consolidating the Related Cases, and any future-filed cases arising from the common Data Breach, will avoid duplication of effort and the risk of inconsistent decisions and unfairness that may result in different judges reviewing the same facts to make determinations about the likelihood of success of the claims.

Accordingly, to ensure continued judicial efficiency, Plaintiffs in each of the Related Cases jointly and respectfully request that the Court order that the Related Cases any future actions that are filed or transferred to this Court and are based on the same or similar facts and circumstances be consolidated in the proposed master action: *In re: Southern Graphics, Inc. Data Breach Litigation*, Case No. 3:25-cv-563.

**IV. THE COURT SHOULD APPOINT INTERIM CLASS COUNSEL**

**A. Legal Standard**

Federal Rule of Civil Procedure 23(g)(3) permits the appointment of interim lead counsel "to act on behalf of putative class members before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). Early appointment of interim class counsel is warranted

when there are competing "copycat" filings ***or*** the risk of such filings. Moreover, "[i]t is common, and efficient, to appoint interim co-lead counsel in the same stroke as consolidating related actions." *Hiley*, 2023 U.S. Dist. LEXIS 29145, at *7 (quotations omitted).

Designation of a co-leadership structure eliminates uncertainty regarding who will be primarily responsible for leading the consolidated action. Multiple identical or similar actions prevent efficient prosecution of claims, disjointed legal strategy, and prejudice to both defendants, plaintiffs, and putative class members. *See Gamboa v. Ford Motor Co.*, 381 F. Supp. 3d 853, 867 (E.D. Mich. 2019) ("Designation of interim counsel is particularly appropriate when a number of lawyers have filed related 'copycat' actions."); *Ekin v. Amazon Servs., LLC*, No. C14-0244-JCC, 2014 WL 12028588, at *3 (W.D. Wash. May 23, 2014) ("designation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement.") (quoting MANUAL OF COMPLEX LITIGATION § 21.11 (4th ed. 2004)).

Rule 23(g) contemplates early appointment of class counsel, even where there are no competing applications. *See Duqum v. Scottrade, Inc.*, No. 4:15-cv-1537-SPM, 2016 WL 1700427, at *1 (E.D. Mo. Apr. 28, 2016). Indeed, the Advisory Committee Notes to Rule 23(g)(2)(A) explain that the rule "authorizes [a] court to designate interim counsel during the pre-certification period if necessary to protect the interests of the putative class." Designating class counsel now ensures the protection of the interests of the Class in making and responding to motions, conducting discovery, and negotiating possible settlements. *See Leeb v. Charter Comm'ns, Inc.*, No. 4:17CV2780 RLW, 2019 WL 1372587, at *1 (E.D. Mo. Apr. 3, 2019); *Syzmczak v. Nissan N. Am., Inc.*, Nos. 10 CV 7493(VB), 12 CV 2149(VB), 2012 WL 1877306, at *1 (S.D.N.Y. May 15, 2012)

(citing *Manual for Complex Litig*. § 21.11 (4th ed. 2004)).

Determining the appointment of interim class counsel requires the court to consider counsel's: (1) work in identifying and investigating potential claims; (2) experience in handling class action and complex litigation and the types of claims asserted in the action; (3) knowledge of the applicable law; and (4) available resources. *Hiley*, 2023 U.S. Dist. LEXIS 29145, at *7 (citing Fed. R. Civ. P. 23(g)(1)(A)). The court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Id.* (citing Fed. R. Civ. P. 23(g)(1)(B)). The purpose of this Court's review is to ensure that counsel appointed to leading roles are "qualified and responsible, that they will fairly and adequately represent all parties on their side, and that their charges will be reasonable." *Manual for Complex Litig*. § 10.22 (4th ed. 2004). The ultimate goal is "achieving efficiency and economy without jeopardizing fairness to parties." *Id.* § 10.221; *see also Cappello v. Franciscan All., Inc.*, No. 3:16-CV-290-TLS-MGG, 2017 WL 781609, at *3 (N.D. Ind. Feb. 28, 2017). Ultimately, no single factor is determinative; instead, a court should appoint counsel after evaluating all relevant considerations and comparing the relative strengths of counsel. *See* Fed. R. Civ. P. 23(g)(1)(A)-(B); 7B Charles Alan Wright et al., FEDERAL PRACTICE. & PROCEDURE § 1802.3 (3d ed. 2005).

**B. The Court Should Appoint Mariya Weekes, Jeff Ostrow, William B. Federman, Raina Borrelli, and Grayson Wells as Interim Co-Lead Counsel.**

As described herein, Plaintiffs' proposed leadership structure will permit them to prosecute these Related Actions efficiently and in the best interests of the putative Class. Proposed Interim Co-Lead Counsel are experienced in handling class action litigation, particularly data breach and privacy cases, and have performed substantial work investigating, originating, coordinating, and litigating Plaintiffs' claims. Further, they have the experience, knowledge, and resources to continue to prosecute an eventual consolidated action in the putative Class Members' best

interests. Additionally, Proposed Interim Co-Lead Counsel have a history of working together and, in the event they are appointed, will continue to do so cooperatively and effectively for the putative Class.

### 1. ***Proposed Interim Co-Lead Counsel have Performed Substantial Work Investigating and Litigating the Claims.***

Proposed Interim Co-Lead Counsel have been diligent in investigating and advancing this litigation. Their investigations prior to filing the Related Cases included, without limitation, analyzing the circumstances surrounding the Data Breach, interviewing individuals injured by the Data Breach, researching potential legal claims, drafting initial pleadings and statutory notices, and organizing Plaintiffs and counsel to self-consolidate the actions and move the litigation forward. Indeed, Proposed Interim Co-Lead Counsel worked to quickly organize and avoid any delay that could be caused by a leadership dispute to address the merits of the case as expeditiously as possible. Proposed Interim Co-Lead Counsel's efforts at self-organization were successful, as evidenced by this Motion. Going forward, and if appointed, Proposed Interim Co-Lead Counsel will establish a standardized protocol for managing and reporting time and expenses incurred. Accordingly, the substantial work and investigation to date weigh in favor of appointing Proposed Interim Co-Lead Counsel under Rule 23(g)(3).

### 2. ***Proposed Interim Co-Lead Counsel Have Significant Relevant Experience.***

Proposed Interim Co-Lead Counsel are well-qualified to lead this case. Each member has a track record of successfully litigating and resolving consumer class actions, particularly data breach cases. Proposed Interim Co-Lead Counsel have ample experience handling class actions—including class actions involving data breaches—complex litigation, and consumer claims. The qualifications and experience of Proposed Interim Co-Lead counsel are set forth below.

**<u>Jeff Ostrow of Kopelowitz Ostrow, P.A.</u>**

Jeff Ostrow is the Managing Partner of Kopelowitz Ostrow P.A. and has been practicing law for 28 years. Mr. Ostrow established the South Florida-based firm immediately following his graduation from Nova Southeastern University in 1997 and has since grown it to 25 attorneys.

Beyond managing the firm, Mr. Ostrow heads the class action department and maintains a full caseload of nationwide class actions. Although Mr. Ostrow currently only represents class plaintiffs, he has prior experience defending large companies in class actions, including banks, commercial lenders, and tech companies, which affords him a valuable perspective and advantage in litigation and settlement.

Mr. Ostrow oversees one of the largest data breach groups in the country. He is currently Lead Counsel in MDL-3090, *In re Fortra File Transfer Software Data Sec. Breach Litig.*, No. 24-md-3090 (S.D. Fla.), which involves 10 defendants and 6 million people. Additional examples of other cases in which he serves as Lead Counsel include: *Crowe v. Managed Care of N. Am., Inc.*, No. 23-cv-61065 (S.D. Fla.), affecting eight million individuals; *In re Zeroed-In Techs., LLC Data Breach Litig.*, No. 1:23-cv-03284-BAH (D. Md.), affecting two million individuals, *Harrell v. WebTPA Employer Servs. LLC*, No. 3:24-cv-01160 (N.D. Tex.), affecting two and half million individuals; *Stallone v. Fin. Bus. & Consumer Sols., Inc.*, No. 2:24-cv-01876 (E.D. Pa.), affecting almost two million individuals; *Gambino v. Berry, Dunn, Mcneil & Parker LLC*, No. 2:24-cv-146 (D. Me.), affecting 1.1 million individuals; *Mclean v. Signature Performance, Inc.*, No. 8:24-cv230 (D. Neb.), affecting at least 106,540 patients; *Wilson v. Frontier Comm'ns Parent, Inc.*, No. 3:23-CV-01418-L (N.D. Tex.), affecting at least 750,000 individuals; *Flores v. S. Tex. Oncology & Hematology, PLLC*, No. 2024CI13299 (Tex. Dist. Ct., Bexar Cty.), affecting 176,303 patients; *In re HealthEquity, Inc. Data Sec. Incident Litig.*, No. 2:24-cv-528 (D. Utah), affecting 4.3 million

patients; *Griffiths v. Kootenai Health, Inc.*, No. 2:24-cv-205 (D. Idaho), affecting 827,149 patients; *Butler v. Acadian Ambulance Serv., Inc.*, No. 6:24-cv-01011 (W.D. La.), affecting 3 million patients; and *In re DISA Global Data Breach Litigation*, No. 4:25-cv-00821 (S.D. Tex.), affecting 3.3 million people.

For about 13 years, Mr. Ostrow's firm served as Coordinating Counsel, Settlement Class Counsel, and Lead Class Counsel in *In re Checking Acct. Overdraft Litigation*, No. 1:09-MD-02036-JLK (S.D. Fla.), a large MDL that resulted in the recovery of $1.2 billion from the nation's largest banks, and is Liaison Counsel in *In re Disposable Contact Lens Antitrust Litigation*, No. 3:15-md-2626-HES-JRK (M.D. Fla.), an antitrust class action with $85 million recovered to date. Moreover, Mr. Ostrow's firm is co-counsel for Broward County and the City of Fort Lauderdale in *In re: National Prescription Opiate Litigation*, No. 1:17-md-2804 (N.D. Ohio), and for the Broward and Miami Dade County School Boards in *In re Juul Labs*, No. 19-md-2913 (N.D. Cal.), helping clients recover $100 million and $26 million, respectively.

Federal judges have recognized Mr. Ostrow's commitment to excellence. In *Farrell v. Bank of America, N.A.*, 327 F.R.D. 422, 432 (S.D. Cal. 2018), in which Mr. Ostrow served as lead counsel on behalf of millions of people, United States District Judge James Lorenz made the following observation when granting final approval of a settlement that included a $68 million recovery and $1.2 billion in injunctive relief requiring the defendant bank to stop an enormously lucrative practice:

> Class Counsel achieved this result through tenacity and great skill. In all of their written submissions and in their presentation at the Final Approval Hearing, Class Counsel's arguments were laudably clear and precise, no small feat given the complexity of the legal questions at issue here. It is clear that substantial preparation went into all of Class Counsel's work on this case.

Similarly, when approving a $13 million settlement in which Mr. Ostrow was one of the

lead counsel, United States District Judge James Lawrence King commented that "Class Counsel's efforts in pursing and settling these consumer claims were, quite simply, outstanding." *In re Checking Account Overdraft Litig.*, 1:09-md-02036-JLK, 2013 WL 11319244, *16 (S.D. Fla. Aug. 2, 2013). In another recent case in which Mr. Ostrow was lead counsel, United States District Judge Jose Martinez noted, "Here, Class Counsel worked extensively and with a high level of skill to advance Plaintiff's claims . . . The case involved difficult factual and legal issues from a global pandemic. . . . Despite the strong defenses presented by Barry [University], Class Counsel obtained an excellent result for the Settlement Class Members." *Rosado v. Barry Univ., Inc.*, No. 1:20-cv-21813-JEM (S.D. Fla.), ECF No. 84 at 14.

Mr. Ostrow has worked productively with Proposed Interim Co-Lead Counsel in many other cases. He is confident that this proposed leadership structure will result in an excellent recovery for all clients and Class Members. A copy of Mr. Ostrow's resume, which includes additional information about Mr. Ostrow and his firm, is attached hereto as **Exhibit 1**.

**Mariya Weekes of Milberg Coleman Bryson Phillips Grossman, PLLC**

Mariya Weekes is a partner at the international plaintiffs' class action firm Milberg Coleman Bryson Phillips Grossman, PLLC ("Milberg"). Since Milberg's founding in 1965, it has repeatedly taken the lead in landmark cases that have set groundbreaking legal precedents, prompted changes in corporate governance, and recovered over $50 billion in verdicts and settlements.[1]Milberg has been instrumental in obtaining precedent setting decisions at every level, including at the United States Supreme Court.[2] The firm pioneered federal class action litigation

[1] *See, e.g., In re Tyco International Ltd., Securities Litigation*, MDL 1335 (D.N.H.) (serving as lead counsel and obtaining approval of $3.2 billion settlement); *In re Prudential Insurance Co. Sales Practice Litigation*, No. 95-4704 (D.N.J.) (serving as lead counsel and recovering more than $4 billion for policyholders); *see also* https://milberg.com/outstanding-recoveries/.
[2] *See* https://milberg.com/precedent-setting-decisions/page/3/.

and is widely recognized as a leader in defending the rights of victims of corporate and other large-scale wrongdoing. Milberg is recognized as having one of the most respected data privacy practice groups in the United States, having been ranked by Chambers and Partners as Band 3 for Privacy & Data Security Litigation (2024). Law360 recently highlighted Milberg's work in the privacy space. Milberg has more than 100 attorneys on staff and has offices across the United States and the European Union.

Ms. Weekes is a former Florida State Circuit Court Judge, elected to the bench by her constituents. As a Florida Circuit Court Judge, she presided over thousands of complex cases, hundreds of trials, and motions. In her capacity as a Circuit Court Judge, she served on the Circuit's appellate panels reviewing appeals from the lower trial Courts and administrative agencies. Before ascending to the bench, she practiced as a trial lawyer representing individuals and corporations in complex cases throughout the State of Florida. As a practicing attorney, she has personally tried dozens of jury trials to verdict and has participated in many significant cases. Both as a civil trial lawyer and former prosecutor, she has handled complex cases from their inception through appeal.

After stepping down from the bench, Ms. Weekes joined Milberg's Cybersecurity and Data Privacy Group, which has extensive experience serving as leadership in numerous privacy class actions, including as lead or co-lead counsel in the largest data breaches in the country. *See, e.g.*, *In Re: Hot Topic Data Breach Litigation*, No. 2:24-cv-9215-MEMF-AS (C.D. Cal.) (Ms. Weekes appointed co-lead counsel in a consolidated action involving more than 57 million customers); *In Re: LoanCare Data Security Breach Litig.*, No. 3:23-cv-1508-MMH-MCR (M.D. Fla.) (where Ms. Weekes was appointed co-lead counsel in a consolidated action involving more than 1.3 million consumers); *In Re: Berry, Dunn, McNeil & Parker Data Security Incident Litigation.*, No. 2:24-cv-00146 (D. Maine) (Ms. Weekes was appointed to the executive committee in a consolidated

action involving 1.1 million consumers); *Reichbart v. Financial Business and Consumer Solutions, Inc*., No. 24-cv-1876 (E.D. Penn.) (Ms. Weekes was appointed chair of the Plaintiffs' Executive Committee in a consolidated action involving more than 1.9 million consumers); *Morrison et al. v. Family Dollar Stores, LLC, et al*., 0:24-cv-60294-AHS (S.D. Fl.) (Ms. Weekes was appointed as co-lead counsel in a consolidated consumer protection class action involving adulterated mediations impacting thousands of consumers across 19 States); *In Re ConnectonCall.com Data Breach Litigation*, No. 2:24-cv-08790-SJB-JMW (E.D NY) (Ms. Weekes appointed Interim Co-Lead Counsel); *Zayatz v. Akumin Operating Corp*., No. 0:24-cv-62439-RS (S.D. Fl) (Ms. Weekes appointed Interim Co-Lead Counsel); *Owings v. Medusind, Inc*., 1:25-cv-20117-RAR (S.D. Fl) (Ms. Weekes appointed interim co-lead counsel); *W. v. LivaNova USA, Inc*., No. 4:24-cv-02250 (S.D. Tex.) (Ms. Weekes was appointed Interim Co-Lead Counsel); *In re Coastal Orthopedics & Sports Medicine of Southwest Florida Data Breach Litig.*, No. 2024-CA-1078AX (12th Judic. Circ. Ct. of Fla., Manatee Cnty) (Ms. Weekes was appointed Interim Class Counsel); *Lomedico v. MarineMax, Inc*., No. 8:24-cv-1784-MSS-AEP (M.D. Fla.) (appointed joint Interim Class Counsel); *In re TRC Staffing Services, Inc. Data Breach Litig.*, No. 1:24-cv-02398-VMC (N.D. Ga.) (Ms. Weekes was appointed co-lead counsel); *Lepore et al v. Affiliated Dermatologists & Dermatologic Surgeons, P.A.*, No. MRS-L-001091-24 (Ms. Weekes was appointed Interim Class Counsel); *Owens et al v. MGM Resorts International, et al.*, No. 2:23-cv-01480-RFB-MDC (D. Nev.) (Ms. Weekes was appointed to Plaintiffs' Steering Committee); *Mckinley v, Doxim, Inc*. No. 2:24-cv-11550-TGB-CI (E.D. Mich.) (Ms. Weekes was appointed co-lead counsel); *Cucuta v. FloridaCentral Credit Union*, No. 24-CA-006065 (Hillsborough County, Fl.) (Ms. Weekes was appointed co-lead counsel).; *In re: MoveIt Customer Data Security Breach Litigation*, 1:23-md-03083 (D. Mass.) (where Milberg was appointed to the leadership committee in multi-district

litigation involving a data breach that impacted more than 95 million consumers).[3]Milberg's Cybersecurity and Data Privacy Group is largely responsible for developing the favorable case law that many plaintiffs rely on in the data breach space. *See e.g., Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365 (1st Cir. 2023) (Milberg attorneys obtained a decision from the First Circuit reversing the dismissal with prejudice of a data breach case and finding Article III standing); *In re Arthur J. Gallagher Data Breach Litig*., 631 F. Supp. 3d 573, 586 (N.D. Ill. 2022) (Milberg attorneys largely defeated a motion to dismiss in a data breach case involving 3 million consumers); *In re Blackbaud, Inc., Customer Data Breach Litig*., No. 3:20-MN-02972-JMC, 2021 WL 2718439, at *1 (D.S.C. July 1, 2021) (Milberg attorneys defeated a standing challenge in a 10 million person data breach case). Milberg's firm resume is attached as **Exhibit 2**.

**William B. Federman of Federman & Sherwood**

Mr. Federman, the founder and managing member of Federman & Sherwood, has more than 41 years of diverse, hands-on, trial and appellate experience in the areas of data breach litigation, class action litigation, financial fraud litigation, commercial litigation, and consumer litigation. Mr. Federman has represented clients in multidistrict litigation proceedings, federal courts, state courts, and arbitration forums across the United States. Indeed, Mr. Federman has litigated hundreds of class action lawsuits demonstrating he has the skill, knowledge, and experience necessary to best serve the interests of Plaintiffs and the putative classes.

Mr. Federman and Federman & Sherwood are trailblazers in the data privacy litigation sector, having prosecuted data breach cases for more than seven years, playing a pivotal role in

[3] *See, also Morrill v. Lakeview Loan Servicing, LLC*, No. 1:22-cv-20955-DPG (S.D. Fla.) (where Milberg is appointed to the leadership committee in a data breach class action involving 6 million consumers); *Sherwood v. Horizon Actuarial Services, LLC*, No. 1:22-cv-01495-ELR (N.D. Ga.) (where Milberg is court-appointed co-lead counsel in a data breach class action involving 4 million consumers).

developing key decisions that are regularly relied upon by courts and counsel across the nation. *See, e.g.*, *In re Brinker Data Incident Litig.*, No. 3:18-CV-686-TJC-MCR, 2021 WL 1405508 (M.D. Fla. Apr. 14, 2021), *vacated in part sub nom. Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883 (11th Cir. 2023) (one of the first cases where class certification was achieved in the data breach context); *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183 (S.D. Fla. 2022); *Bowen v. Paxton Media Grp., LLC*, No. 5:21-CV-00143-GNS, 2022 WL 4110319 (W.D. Ky. Sept. 8, 2022); *Mackey v. Belden, Inc.*, No. 4:21-CV-00149-JAR, 2021 WL 3363174 (E.D. Mo. Aug. 3, 2021). As pioneers in this field, Federman & Sherwood are well-versed in the applicable law, which makes them well-suited for efficiently preparing briefs and developing discovery.

Federman & Sherwood also has a proven track record of successful and persuasive briefing, thwarting numerous motions to dismiss in the data privacy context. *See, e.g., Carr v. Oklahoma Student Loan Auth.et al.*, No. CIV-23-99-R, 2023 WL 6929850 (W.D. Okla. Oct. 19, 2023) (motion to dismiss granted in part and denied in part against the Oklahoma Student Loan Authority); *Carr v. Oklahoma Student Loan Auth. et al.,* No. CIV-23-99-R, 2023 WL 6929853 (W.D. Okla. Oct. 19, 2023) (motion to dismiss granted in part and denied in part against Nelnet Servicing, LLC); *Lochridge v. Quality Temp. Servs., Inc.*, No. 22-CV-12086, 2023 WL 4303577 (E.D. Mich. June 30, 2023) (motion to dismiss granted in part and denied in part); *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183 (S.D. Fla. 2022) (motion to dismiss denied in part and granted in part); *Fischer v. CentralSquare Techs., LLC*, No. 21-CV-60856-RAR, 2021 WL 10558134 (S.D. Fla. Sept. 16, 2021) (surviving motion to dismiss in part); *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 613 F. Supp. 3d 1284, 1296 (S.D. Cal. 2020) (order granting in part and denying in part the defendant’s motion to dismiss).

These successes make it apparent that Federman & Sherwood is an asset to the successful prosecution of this proceeding.

Due to Federman & Sherwood's early involvement in this area of law and its plethora of success, Federman & Sherwood has served as lead counsel or co-lead counsel in countless data breach lawsuits spanning across the nation, including: *In re medQ, Inc. Data Breach Litig.*, No. 4:24-cv-00176 (E.D. Tex.) (interim co-lead class counsel); *In re Brinker Data Incident Litig.*, No. 3:18-CV-686-TJC-MCR, 2021 WL 1405508 (M.D. Fla. Apr. 14, 2021), *vacated in part sub nom. Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883 (11th Cir. 2023) (co-lead class counsel); *Rose, et al. v. BHI Energy Services, LLC, et al.*, No. 1:23-cv-12513 (D. Mass.) (interim co-lead counsel); *Woods, et al. v. Albany ENT & Allergy Services, PC*, No. 904730 (N.Y. Sup. Ct. Albany Cnty.) (interim co-lead counsel); *Perez v. Carvin Wilson Software LLC*, No. CV-23-00792-PHX-SMM (D. Ariz.) (interim co-lead class counsel); *Bingaman, et al. v. Avem Health Partners, Inc.*, No. CIV-23-134-SLP (W.D. Okla.) (interim lead class counsel and interim liaison class counsel); *Okonski, et al. v. Progressive Casualty Insurance Company*, No. 1:23-cv-01548 (N.D. Ohio) (interim co-lead class counsel); *In re: Bryan Cave Leighton Paisner, LLP Data Breach Litigation*, No. 1:23-cv-04249 (N.D. Ill.) (interim lead class counsel); *Sanders, et al., v. Ibex Global Solutions, Inc., et al.*, No. 1:22-cv-00591-TNM (D.D.C.) (co-lead settlement class counsel); *Mackey v. Belden, Inc.*, No. 4:21-cv-00149-JAR (E.D. Mo.) (co-lead settlement class counsel); *In re: Solara Medical Supplies Data Breach Litigation*, No. 3:19-cv-00284-H-KSC (S.D. Cal.) (interim co-lead class counsel); *McFarlane et al. v. Altice USA, Inc.*, No. 20-cv-1297 (S.D.N.Y.) (interim lead counsel); *M.S. and D.H. v. Med-Data, Inc.*, No. 4:22-cv-00187 (S.D. Tex.) (interim co-lead class counsel; settlement pending); *White v. Med. Rev. Inst. of Am., LLC*, No. 2:22-CV-00082-DAK-DAO (D. Utah July 22, 2022) (co-lead class counsel); *In re Snap Finance Data Breach Litig.*, No. 2:22-cv-

00761-TS-JCB (D. Utah) (interim co-lead counsel); and *In re: Physician's Business Office Data Incident Litigation*, No. CC-54-2022-C-252 (Wood Cnty. Cir. Ct. of West Virginia) (interim co-lead class counsel).

Not only does Federman & Sherwood possess the requisite skill, knowledge, and experience, but it also has adequate financial resources to support the litigation. Due to its success as a prominent class action law firm, Federman & Sherwood has assisted in numerous cases, funding litigation expenses in excess of $1 million. Federman & Sherwood has both the financial resources and the staff to assist in resolving this case and does not use or rely upon third-party funding sources. Additional information regarding Mr. Federman and Federman & Sherwood is detailed in the Federman & Sherwood Firm Résumé, attached hereto as **Exhibit 3**.

Given Federman & Sherwood's vast experience and proven track record in successfully prosecuting class action data breach cases, William B. Federman of Federman & Sherwood would serve as excellent Interim Co-Lead Class Counsel**.**

**Raina Borrelli of Strauss Borrelli PLLC**

Raina Borrelli is a is a founding partner of Strauss Borrelli PLLC where she leads the firm's class action litigation practice.[4] Ms. Borrelli received her J.D. magna cum laude from the University of Minnesota Law School in 2011. Prior to joining Strauss Borrelli, Ms. Borrelli was a partner at Gustafson Gluek PLLC, a boutique class action firm in Minneapolis, Minnesota, where she successfully prosecuted complex class actions in federal and state courts, including *Hudock v. LG Electronics USA, Inc.*, 16-cv-1220 (JRT/KMM) (D. Minn.); *Baldwin v. Miracle-Ear, Inc.*, 20-cv-01502 (JRT/HB) (D. Minn.); *In re FCA Monostable Gearshifts Litig.*, 16-md-02744 (E.D. Mich.); *Zeiger v. WellPet LLC*, 17-cv-04056 (N.D. Cal.); *Wyoming v. Procter & Gamble*, 15-cv-

[4] A copy of Strauss Borrelli PLLC's firm resume is attached hereto as **Exhibit 4**.

2101 (D. Minn.); *In re Big Heart Pet Brands Litig.*, 18-cv-00861 (N.D. Cal.); *Sullivan v. Fluidmaster*, 14-cv-05696 (N.D. Ill.); *Rice v. Electrolux Home Prod., Inc.*, 15-cv-00371 (M.D. Pa.); *Gorczynski v. Electrolux Home Products, Inc.*, 18-cv-10661 (D.N.J.); *Reitman v. Champion Petfoods*, 18-cv-1736 (C.D. Cal.); *Reynolds, et al., v. FCA US, LLC*, 19-cv-11745 (E.D. Mich.). Ms. Borrelli has repeatedly been named to the annual Minnesota "Rising Star" Super Lawyers list (2014-2021) by SuperLawyers Magazine. She has also been repeatedly certified as a North Star Lawyer by the Minnesota State Bar Association (2012-2015; 2018-2020) for providing a minimum of 50 hours of pro bono legal services.

Ms. Borrelli has significant experience in data privacy litigation and is currently litigating hundreds of data breach cases in courts around the country as lead counsel or co-counsel on behalf of millions of data breach victims, including *In re Netgain Tech. Consumer Data Breach Litig.*, 21-cv-1210 (D. Minn.) (appointed by the court to the Plaintiffs' Interim Executive Committee); *In re C.R. England, Inc. Data Breach Litig.*, 2:22-cv-374-DAK-JCB (appointed by the court has Interim Co-Lead Counsel); *Medina et al. v. PracticeMax Inc.*, 22-cv-01261-DLR (D. Ariz.) (appointed to Executive Leadership Committee); *Forslund et al. v. R.R. Donnelley & Sons Co.*, 1:22-cv-04260 (N.D. Ill.) (appointed as interim co-lead class counsel); *In re Lincare Holdings, Inc. Data Breach Litig.*, 8:22-cv-01472 (M.D. Fla.) (appointed to Interim Executive Leadership Committee, achieving a $7.25 million settlement for the class); *In re Thompson Coburn Data Security Litig.*, 4:24-cv-1509 (E.D. Mo.) (appointed interim co-lead class counsel); *In re CDK Global Data Security Consumer Litig.*, 1:24-cv-05221 (N.D. Ill.) (appointed interim co-lead counsel); *Grogan v. McGrath RentCorp., Inc.*, 22-cv-490 (N.D. Cal.); *Darrin et al. v. Huntington Ingalls Indus.*, 4:23-cv-00053 (E.D.V.A.) (appointed interim co-lead class counsel); *Hulewat et al. v. Medical Management Resource Group, LLC*, 2:24-cv-00377 (D. Ariz.) (appointed Interim Co-

Lead Class Counsel); *In re CDK Global Data Security Breach Litig.*, 1:24-cv-05221 (N.D. Ill.) (appointed Interim Co-Lead Class Counsel); *Garcia et al. v. Set Forth, Inc. et al.*, 1:24-cv-11688 (appointed Interim Co-Lead Class Counsel following contested motion practice).

In addition to her robust data breach practice, Ms. Borrelli is also currently litigating a variety of consumer protection cases, including under the TCPA, various state right of publicity laws, and under the Illinois Biometric Information Privacy Act, including: *Murray, et al. v. Grocery Delivery E-Services USA Inc. d/b/a Hello Fresh*, 19-cv-12608 (D. Mass.) ($14 million TCPA class settlement); *Baldwin, et al. v. Miracle-Ear, Inc., et al.*, 20-cv-1502 (D. Minn.) ($8 million TCPA class settlement); *Callahan v. PeopleConnect, Inc.*, 20-cv-9203 (N.D. Cal.); and *Kellman et al. v. Spokeo*, 21-cv-08976 (N.D. Cal.).

Ms. Borrelli and her firm are qualified to serve as Interim Co-Lead Counsel in this case.

**Grayson Wells of Stranch, Jennings & Garvey, PLLC**

Grayson Wells is an attorney in Stranch, Jennings & Garvey's ("SJG") complex litigation practice group and specializes in data breach class action litigation. Beyond his experience as an attorney, Mr. Wells possesses significant technical knowledge in the area of cybersecurity and network infrastructure engineering. Mr. Wells' technical knowledge is based on his almost thirteen years of experience as an engineer and his education, which includes a Master of Science in Cybersecurity Risk Management, and a Bachelor of Science in Computer Science. During his career as an engineer, Mr. Wells served in the U.S. Air Force and managed myriad highly classified network environments across government agencies, including during a deployment to Baghdad, Iraq, in 2006. After serving in the Air Force, Mr. Wells was a defense contractor for U.S. Army special forces at Fort Campbell, Kentucky. Then, in the private sector, Mr. Wells worked as a senior

engineer for an international law firm and then as a senior consulting engineer for a global technology firm.

As an attorney, Mr. Wells has focused on cybersecurity and privacy matters. Before joining SJG, Mr. Wells served as defense counsel for many such matters, including litigating privacy cases and advising companies on how to properly respond to cybersecurity incidents in accordance with the various data breach notification statutory and regulatory requirements. Now, as a consumer advocate, Mr. Wells has and continues to litigate hundreds of data breach class actions across the country, including many ongoing cases and many that have resulted in excellent settlements for class members. *Foxie v. Maryville Academy*, No. 2025 CH 05909 (Cook Cnty. Ch. Ct.) (appointed interim co-lead); *Smith et. al., v. Findlay Automotive, Inc.,* No. 2:24-cv-01226 (D. Nev.) (appointed interim co-lead); *Martinez et al. v. Presbyterian Healthcare Services*, No. D-202-CV-2020-01578 (N.M. Dist. Ct.) (class of 1,047,428 individuals); *Edwards v. Concord Music Grp.*, No. 24C2675 (Tenn. Cir. Ct.); *Bauer v. BJC Health Sys.*, No. 2022-CC-09492 (Mo. Cir. Ct.); *Castaneda v. Ardagh Glass, Inc.*, No. 1:23-cv-02214 (S.D. Ind.) ($2,750,000.00 settlement for a class of approximately 5,300); (*O'Neal v. Quaker Window Prods.*, No. 24OS-CC-00002 (Mo. Cir. Ct.); *Doe v. SSM & Navvis*, No. 2422-CC-00208 (Mo. Cir. Ct.) (final approval pending for a $6.5 million settlement); *Owens v. MGM Resorts Int'l*, No. 2:23-cv-01480 (D. Nev.) ($45 million settlement as part of an agreement to resolve claims arising under both of MGM's 2019 and 2023 data breaches); *In re Evolve Bank & Trust Customer Data Security Breach Litig.*, No. 2:24-md-03127 (W.D. Tenn.) (final approval pending on a nearly $12 million settlement); *Lewis v. Mountain View Hosp., LLC*, No. 3:24-cv-00175 (M.D. Tenn.) (settlement worth up to $4.4 million for more than 400,000 class members); *Doe et al v. HSCGP, Inc.*, No. 23C2513 (Tenn. Cir. Ct.) (settlement valued at approximately $23 million to redress alleged privacy violations related to disclosure of health

information to Meta); *In re HCA Healthcare, Inc. Data Sec. Litig.*, No. 3:23-cv-00684 (M.D. Tenn) (preliminary approval granted for a class of approximately 11 million patients); *Weber v. Nat'l Advisors Tr.*, No. 4:24-cv-162 (W.D. Mo.) ($650,000 settlement for a class of 14,043); *Black v. Smith Transport, Inc.*, No. 2022 GN 3110 (Blair Cnty, Pa. C.P).

Beyond Mr. Wells' specific legal and technical expertise, he is able to draw on the considerable expertise of the other members of the SJG complex litigation team. This includes J. Gerard Stranch, IV, the Firm's Managing Partner and one of the most experienced consumer class action advocates in the country. Indeed, Stranch, Jennings & Garvey is currently litigating hundreds of consumer class actions across the country. Moreover, Mr. Wells is fully committed to co-leading this matter in an efficient, thoughtful, and professional manner and has a proven track record both as a lawyer and as an engineer in working collaboratively with colleagues and leading teams of professionals from all walks of life. Stranch, Jennings & Garvey, PLLC's firm resume is attached hereto as **Exhibit 5**.

***3. Proposed Interim Co-Lead Counsel Have Committed, and Will Continue to Commit, the Resources Necessary to Represent the Class.***

A court appointing interim lead counsel should consider, in part, the resources that counsel will commit to representing the putative classes. Fed. R. Civ. P. 23(g)(1)(C). Proposed Interim Co-Lead Counsel can, as needed, draw upon the skills and talents of experienced attorneys and staff members located across the country. Each firm understands the time, energy, and skill necessary to lead this litigation and all have committed the resources required to ensure the effective and efficient representation of the Class Members. In fact, Proposed Interim Co-Lead Counsel have already demonstrated their commitment to this litigation by devoting substantial resources to prosecuting this action. Proposed Interim Co-Lead Counsel have already engaged in discussions with experts and have expended significant resources in investigating the data breach,

communicating with affected individuals, researching, and drafting complaints. To ensure adequate funds are available to prosecute this litigation, Proposed Interim Co-Lead Counsel will also establish a system to pay assessments proportional to the needs of the case. And, as their firm resumes and counsels' experience indicate, Proposed Interim Co-Lead Counsel have the resources and willingness to see this litigation through to its conclusion, including trial.

***4. Other Factors Support Appointing Proposed Interim Co-Lead Counsel.***

Notably, the proposed leadership structure has the support of Plaintiffs' counsel in all the Related Actions. *See In re Aluminum Phosphide Antitrust Litig.*, No. 93-2452, 1994 WL 481847, at *5, 7 (D. Kan. May 17, 1994) ("In designating lead counsel, the court will also give due consideration to the preferences expressed by the parties themselves, through their counsel. Absent persuasive evidence to the contrary, the court assumes that nominations and votes for lead counsel are made in good faith for reasons that benefit the client."); *see also In re Wendy's Co. S'holder Derivative Litig.*, No. 1:16-cv-1153, 2018 WL 6605394 at *2 (S.D. Ohio Dec. 17, 2018) (quoting *Kubiak v. Barbas*, No. 3:11-cv-141, 2011 WL 2443715, at *2 (S.D. Ohio June 14, 2011)) ("[C]ounsel's ability to make inclusive efforts on behalf of all plaintiffs is an 'essential attribute' for lead counsel."); MANUAL FOR COMPLEX LITIG. §§ 10.22 (noting desirability of "the attorneys coordinat[ing] their activities without the court's assistance"), 10.272 (describing "private ordering" approach). Proposed Interim Co-Lead Counsel's success in self-organizing and securing each other's support demonstrates their suitability for leadership roles.

Another important consideration in selecting leadership is the ability to work well as a team, with opposing counsel, and with the Court. The role of leadership in complex litigation places a premium on professionalism, cooperation, courtesy, and acceptance of the obligations owed as officers of the court, all of which are critical to successful management of the litigation.

*See* MANUAL FOR COMPLEX LITIG. § 10.21. One of the demanding aspects of complex litigation is "the difficult[y] of having to communicate and establish effective working relationships with numerous attorneys (many of whom may be strangers to each other)." *Id*.

Unlike defense counsel, the plaintiffs' side of consolidated litigation must quickly and effectively merge together to form an alliance against often well-financed opponents. Here, Proposed Interim Co-lead Counsel have coordinated organizational efforts. Because the consolidation process has the potential to breed disorganization, in-fighting, and inefficiencies, it is useful to consider whether counsel applying for leadership "have worked together in other cases, their ability to collaborate in the past, divide work, avoid duplication, and manage costs." *See* Bolch Judicial Institute, Duke Law School, *Guidelines and Best Practices for Large and Mass-Tort MDLs* at 38, 45-46 (2d ed. 2018), *available at* https://judicialstudies.duke.edu/wp-content/uploads/2018/09/MDL-2nd-Edition-2018-For-Posting.pdf ("Duke Guidelines"), at 43. Selecting lawyers who have previously worked together, as is the case here with Proposed Interim Co-Lead Counsel, has many benefits. They have developed working relationships, know of complimentary talents, and have "developed certain systems for handling workflow and comparative advantages that will help expedite the case relative to a leadership committee working together for the first time." *Id*. Proposed Interim Co-Lead Counsel have strong working relationships with each other that will benefit the Class and, recognizing this, moved quickly and effectively to organize the Related Cases to put forward the leadership structure proposed herein.

Importantly, Proposed Interim Co-Lead Counsel have not made any agreements with each other with respect to funding, cost-sharing, pooling clients, fees, or any other matter. Proposed Interim Co-Lead Counsel understand that they will be required to make contributions to fund the litigation, and they will not accept any third-party funding to do so. While Proposed Interim Co-

Lead Counsel intends to litigate the case zealously, they are fully aware of the Court's expectation that they prosecute the case efficiently and without duplication. To this end, Proposed Interim Co-Lead Counsel have already discussed how best to organize to effectively use their diverse skills and unique experiences for the efficient prosecution and management of this litigation, while avoiding unnecessary and duplicative billing.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order:

1) Consolidating the Related Cases under the master case caption *In re: Southern Graphics, Inc. Data Breach Litigation*, Case No. 3:25-cv-563;

2) Striking all pending deadlines in each of the Related Cases, including Defendant's deadlines to answer or otherwise respond to the complaints filed in the Related Cases;

3) Consolidating any future-filed, transferred, or removed case that arises out of the same subject matter as the Related Cases;

4) Appointing Mariya Weekes of Milberg Coleman Bryson Phillips Grossman, PLLC; Jeff Ostrow of Kopelowitz Ostrow, P.A.; William B. Federman of Federman & Sherwood; Raina Borrelli of Strauss Borrelli PLLC; and Grayson Wells of Stranch, Jennings & Garvey, PLLC as Interim Co-Lead Class Counsel pursuant to Federal Rule of Civil Procedure 23(g)(3); and

5) Setting a deadline of 30 days following the entry of an order appointing Interim Co-Lead Class Counsel for the filing of a Consolidated Class Action Complaint.

Dated: October 14, 2025

*/s/ Andrew E. Mize*
Andrew E. Mize (Ky Bar No. 94453)
J. Gerard Stranch, IV*
Grayson Wells*

**STRANCH, JENNINGS & GARVEY, PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel: (615) 254-8801
amize@stranchlaw.com
gstranch@stranchlaw.com
gwells@stranchlaw.com

Jeff Ostrow *
**KOPELOWITZ OSTROW P.A.**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Tel: 954-525-4100
ostrow@kolawyers.com

William B. Federman*
Jessica A. Wilkes*
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Avenue
Oklahoma City, OK 73120
Tel: (405) 235-1560
Fax: (405) 239-2112
wbf@federmanlaw.com
jaw@federmanlaw.com

Mariya Weekes*
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
333 SE 2nd Avenue
Suite 2000
Miami, FL, 33131
Tel: (786) 206-9057
Fax: (786) 879-7520
mweekes@milberg.com

Raina Borrelli*
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Tel: (872) 263-1100
raina@straussborrelli.com

**pro hac vice* or forthcoming

***Counsel for Plaintiffs and the Proposed Class***

**CERTIFICATE OF SERVICE**

It is hereby certified that on October 14, 2025, a true and accurate copy of the foregoing was filed with the Clerk of the Court via the Court's CM/ECF system, which will then send electronic notification of such filing to all counsel of record.

*/s/ Andrew E. Mize*
Andrew E. Mize (Ky Bar No. 94453)