**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**

| | |
|---|---|
| **IN RE: SOUTHERN GRAPHICS, INC. DATA BREACH LITIGATION**<br><br>This Document Relates To: All Actions | Master File No. 3:25-cv-563-DJH-CHL |

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW**

Plaintiffs,[1] individually, and on behalf of others similarly situated, pursuant to Federal Rule of Civil Procedure 23(a), (b)(3), & (e), respectfully move this Court for an order (1) conditionally certifying the proposed Settlement Class for purpose of Settlement; (2) preliminarily approving the Settlement; (3) appointing Mariya Weekes of Milberg PLLC; Jeff Ostrow of Kopelowitz Ostrow, P.A.; William B. Federman of Federman & Sherwood; Raina Borrelli of Strauss Borrelli PLLC; and Grayson Wells of Stranch, Jennings & Garvey, PLLC as Class Counsel for Settlement purposes; (4) appointing Plaintiffs as Class Representatives; (5) approving the forms and substance of the Notices, Notice Program, Claim Form, and Claims Process; (6) approving the procedures for Settlement Class Members to opt-out of or object to the Settlement; (7) appointing Simpluris, Inc. as the Settlement Administrator and ordering it to implement the Notice Program; (8) staying the Action pending Final Approval of the Settlement; and (9) scheduling a Final Approval Hearing.

## I. INTRODUCTION

Plaintiffs allege that in December 2024, Defendant experienced a Data Incident affecting certain Private Information, which may have included names, contact information (such as phone numbers, email and postal addresses), dates of birth, Social Security numbers, passport numbers,

[1] All capitalized terms herein shall have the same meanings as those defined in Section 1 of the Settlement Agreement, attached as ***Exhibit A*** hereto ("Settlement Agreement" or "SA").

driver's license numbers, taxpayer ID numbers, medical and/or health insurance information, financial account numbers, demographic information, employment-related details (such as salary and compensation information and work-related evaluations), and login credentials. SA ¶¶ 2–3. The Data Incident may have affected as many as 39,642 individuals. As a result, this Action was initiated in connection with Defendant's alleged failure to safeguard Settlement Class Members' Private Information. *Id*. ¶ 4. Defendant denies all liability and wrongdoing. *Id*. ¶ 10.

Plaintiffs now seek Preliminary Approval of the proposed Settlement fully resolving the claims in this Action on a classwide basis. After extensive arm's-length negotiations, the Parties reached a Settlement that is fair, reasonable, and adequate, providing meaningful relief to the Settlement Class. *See* Declaration of Class Counsel, attached as ***Exhibit B*** hereto ("Joint Decl."), ¶¶ 9, 22, 25. The Settlement's robust $750,000.00 common Settlement Fund will be used to pay (1) all Settlement Class Member Benefits; (2) all Settlement Administration Costs; (3) any Court-awarded Service Awards to Class Representatives; and (4) any Court-awarded attorneys' fees and costs to Class Counsel. SA ¶ 67. All Settlement Class Members may submit Claims for one of two types of Cash Payments and Credit Monitoring. *Id.* ¶ 71. Given the significant litigation risks and the efficiency by which a resolution was reached, the Settlement represents an outstanding recovery for the Settlement Class. Joint Decl. ¶¶ 16, 23. Plaintiffs strongly support the Settlement, as do Class Counsel based on their decades of collective experience. *Id*. ¶¶ 20–22.

As set forth below, the proposed Settlement is fair, reasonable, and adequate, and warrants Preliminary Approval.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Defendant is a Kentucky-based brand consulting agency that provides services in brand strategy, marketing, AI automation solutions, and audience analytics. SA ¶ 1. Defendant employs

nearly 500 individuals across more than 30 countries. *Id*. In the course of its business, Defendant collects, maintains, and stores Private Information pertaining to its employees and their families, including, but not limited to names, contact information (such as phone numbers, email and postal addresses), dates of birth, Social Security numbers, passport numbers, driver's license numbers, taxpayer ID numbers, medical and/or health insurance information, financial account numbers, demographic information, employment-related details (such as salary and compensation information and work-related evaluations), and login credentials. *Id*. ¶ 2.

In December 2024, Defendant detected unauthorized access to certain of its information technology systems. *Id.* ¶ 3. Defendant subsequently determined that the Private Information of approximately 39,642 of its current and former employees and employee family members may have been impacted in what is now referred to as the Data Incident. *Id*. ¶¶ 3–4. In or around September 2025, Defendant began notifying impacted individuals, including Plaintiffs and Settlement Class Members, of the potential compromise of their Private Information in the Data Incident. *Id*. ¶ 4.

Thereafter, five related putative class actions arising from the Data Incident were filed in this Court, asserting similar claims against Defendant on behalf of overlapping putative classes: *Davis v. Southern Graphics, Inc. d/b/a SGS & Co.*, 3:25-cv-563; *Greenwood v. Southern Graphics, Inc. d/b/a SGS & Co.*, 3:25-cv-610; *Palmer v. Southern Graphics, Inc. d/b/a SGS & Co.*, 3:25-cv-613; *Bust v. Southern Graphics, Inc. d/b/a SGS & Co.*, 3:25-cv-617; and *Rojowski v. Southern Graphics, Inc. d/b/a SGS & Co.*, 3:25-cv-657. Joint Decl. ¶ 5. These related cases were consolidated into this Action by order of the Court on November 25, 2025 (Doc. No. 27). *Id.* In addition to consolidating the respective actions arising from the Data Incident, the Court designated Mariya Weekes, Jeff Ostrow, William B. Federman, Raina Borrelli, and Grayson Wells

as interim co-lead counsel, determining they met the adequacy requirements for appointment under Federal Rule of Civil Procedure 23(g). *Id.* On December 22, 2025, Plaintiffs filed their Consolidated Class Action Complaint asserting claims against Defendant for negligence, negligence *per se*, breach of implied contract, breach of fiduciary duty, unjust enrichment, violation of the Kentucky Consumer Protection Act, and declaratory/injunctive relief. *Id.* ¶ 6.

Considering the risk, expense, and delay of continued litigation, the Parties also began discussing early resolution of the Action. *Id.* ¶ 7. To aid in these discussions, Plaintiffs requested and Defendant produced informal discovery regarding the nature and cause of the Data Incident, the impacted individuals and data elements, damage-related issues, and Defendant's financial condition. *Id.* ¶ 8. The materials exchanged in connection with the Parties' negotiations allowed Plaintiffs to thoroughly evaluate the strengths and weaknesses of the claims and defenses in the Action and the potential for resolution. *Id*. The Parties then engaged in arms-length negotiations through experienced counsel, which ultimately resulted in their agreement to resolve the Action through the proposed Settlement. *Id.* ¶ 9. To avoid any potential conflict with the Settlement Class, the Parties did not discuss attorneys' fees, costs, or Service Awards until after the Agreement's terms regarding relief to the Settlement Class were negotiated and agreed upon. *Id*. ¶ 11. Thereafter, the Parties worked cooperatively to negotiate and finalize Settlement terms and the Agreement, Notices, and Claim Form accompanying this Motion. *Id.* ¶ 10.

## III. OVERVIEW OF THE PROPOSED SETTLEMENT

### A. Settlement Class

The proposed Settlement Class is defined as follows: All living individuals in the United States whose Private Information was potentially compromised in the Data Incident, including all individuals who were mailed notice of the Data Incident from Defendant. SA ¶ 60. Excluded from

the Settlement Class are (a) all persons who are directors and officers of Defendant, or its respective subsidiaries and affiliated companies; (b) governmental entities; and (c) the Judge(s) assigned to the Action, the Judge's immediate family, and Court staff. *Id*.

**B. Settlement Consideration**

The Settlement provides significant relief the Settlement Class through its creation of a $750,000.00 non-reversionary common Settlement Fund. SA ¶ 66. The Settlement Fund amount will be the total sum required to be paid by Defendant to settle this Action and will be used to pay (1) all Settlement Class Member Benefits (Cash Payments and Credit Monitoring); (2) all Settlement Administration Costs; (3) any Court-awarded Service Awards to Class Representatives; and (4) any Court-approved attorneys' fees and costs to Class Counsel. *Id.* ¶ 67.

**1.** ***Settlement Class Member Benefits:*** All Settlement Class Members are eligible to submit Claims for (1) either Cash Payment A – Documented Losses (up to $3,500.00 per Claimant) or Cash Payment B – Alternate Cash (a pro rata flat-cash payment); and (2) Credit Monitoring. *Id.* ¶ 72. When submitting a Claim, Settlement Class Members must choose either Cash Payment A – Documented Losses or Cash Payment B – Alternate Cash. *Id.* Settlement Class Members may also elect to receive Credit Monitoring. *Id.* If a Settlement Class Member does not submit a Valid Claim, the Settlement Class Member will release his or her claims against the Released Parties without receiving a Settlement Class Member Benefit. *Id.*

a. <u>Cash Payment A – Documented Losses</u>: All Settlement Class Members may submit a Claim for a maximum of $3,500.00 per Claimant upon presentment of reasonable documented losses related to the Data Incident. *Id.* ¶ 72(a). To receive payment for such documented losses, a Settlement Class Member must elect Cash Payment A – Documented Losses on the Claim Form, attesting under penalty of perjury, and submit reasonable documentation supporting the losses,

which means documentation contemporaneously generated or prepared by a third party or the Settlement Class Member supporting a claim for expenses paid. *Id.* Non-exhaustive examples of reasonable documentation include telephone records, correspondence including emails, or receipts. *Id.* If a Settlement Class Member does not submit reasonable documentation supporting a loss, or if the Settlement Class Member's Claim electing Cash Payment A – Documented Losses is rejected by the Settlement Administrator for any reason and the Settlement Class Member fails to cure, the Claim for documented losses will be rejected and treated as if the Settlement Class Member elected Cash Payment B – Alternate Cash. *Id.*

b. Cash Payment B – Alternate Cash: As an alternative to Cash Payment A – Documented Losses, a Settlement Class Member may instead elect to receive Cash Payment B – Alternate Cash, which is a pro rata flat-cash payment of the Net Settlement Fund. *Id.* ¶ 72(b). Settlement Class Members do not need to provide any proof or explanation to receive this Cash Payment and need only submit a Valid Claim electing Cash Payment B – Alternate Cash. The amount paid for Valid Claims for Cash Payment B – Flat Cash will be subject to a pro rata increase from the Net Settlement Fund in the event the amount of Valid Claims is insufficient to exhaust the entire Net Settlement Fund. *Id*. ¶ 72. Similarly, in the event the amount of Valid Claims exhausts the amount of the Net Settlement Fund, the amount of the Cash Payments may be reduced pro rata accordingly. *Id*. Any pro rata increase or decrease of Cash Payments will be on an equal percentage basis.[2] *Id*.

[2] For purposes of calculating the *pro rata* increase or decrease, the Settlement Administrator must distribute the funds in the following order: Settlement Administration Costs, Class Representative Service Awards, Court-awarded attorneys' fees and costs to Class Counsel, payment of Valid Claims for Credit Monitoring, payment of Valid Claims for Cash Payment A – Documented Losses, and then payment of Valid Claims for Cash Payment B – Alternate Cash. SA ¶ 72.

c. Credit Monitoring: In addition to electing Cash Payment A – Documented Losses or Cash Payment B – Alternate Cash, Settlement Class Members may also Claim two years of one-bureau Credit Monitoring services provided by CyEx. *Id.* ¶ 72(c). The Credit Monitoring services provide Settlement Class Members with proactive protection against identity theft and fraud through account monitoring and real-time alerts of suspicious activity, and $1,000,000 in identity theft insurance covering eligible losses due to financial fraud, with no deductible. Joint Decl. ¶ 24.

**2. Cy Pres *Recipient***: The Settlement is intended to exhaust the Settlement Fund. However, in the event there are funds remaining in the Settlement Fund 240 days following the date Settlement Class Members are sent an email to select their form of payment, said funds attributable shall be treated as residual funds and distributed to an appropriate mutually agreeable *cy pres* recipient to be approved by the Court. SA ¶ 101. Such recipient shall have no affiliation with the Parties or their counsel and must be reasonably related to privacy or data protection, or the promotion of the same through training and awareness programs. *Id.* ¶ 73.

**3. *Releases:*** Following the Effective Date, all Settlement Class Members who have not submitted a timely and valid request to opt-out of the Settlement shall be deemed to have, and by operation of the Final Approval Order shall have, fully, finally, and forever released, acquitted, relinquished, and completely discharged the Released Parties from any and all Released Claims, including but not limited to any federal or state statutory or common law claims arising out of or relating to the Data Incident that the Releasing Parties may have or had. *Id.* ¶ 108. Settlement Class Members who opt-out of the Settlement prior to the Opt-Out Deadline do not release their claims and will not obtain any benefits, including any Settlement Class Member Benefits, under the Settlement. *Id.* ¶ 109.

**C. Notice Program, Claims Process, Opt-Outs, and Objections**

1. ***Settlement Administrator:*** The Parties agree that subject to Court approval, Simpluris shall be the Settlement Administrator. *Id*. ¶ 76. The Settlement Administrator will be responsible for administering all aspects of the Settlement, including disseminating Notice, processing Claims, and distributing Settlement Class Member Benefits. *Id*. ¶¶ 77, 78. Class Counsel shall oversee the Settlement Administrator. *Id*. ¶ 76. All Settlement Administration Costs, including, without limitation, the fees and expenses of the Settlement Administrator, shall be paid, or caused to be paid, from the Settlement Fund. *Id*. ¶ 67.

2. ***Notice Program:*** Within five days of Preliminary Approval, if granted, Defendant will provide the Settlement Administrator with the Class List for purposes of the Notice Program. SA ¶ 79. Within 20 days following entry of the Preliminary Approval Order, the Settlement Administrator shall commence the Notice Program. *Id.* ¶ 80.

Direct Notice will be provided to the Settlement Class via the Postcard Notice, in the form attached as Exhibit 1, sent by U.S. Mail. *Id*. ¶¶ 48, 80. The Settlement Administrator shall perform reasonable address traces for Postcard Notices returned as undeliverable. *Id.* ¶ 87. No later than 45 days before the initial date set for the Final Approval Hearing, the Settlement Administrator shall complete the re-mailing of Postcard Notice to those Settlement Class Members whose new addresses were identified as of that time through address traces. *Id.* The Postcard Notice shall include, among other information, the following: a description of the material terms of the Settlement; a tear-off Claim Form with instructions how to submit a Claim Form; the Claim Form Deadline; Opt-Out Deadline for Settlement Class Members to opt-out of the Settlement Class; the Objection Deadline for Settlement Class Members to object to the Settlement and/or the Application for Attorneys' Fees and Costs; the Final Approval Hearing date; the Settlement Class

toll-free telephone number, and the Settlement Website address at which Settlement Class Members may access the Agreement and other related documents and information. *Id.* ¶ 81.

In addition, prior to the Notice Program commencing the Settlement Administrator will establish a Settlement Website to provide Settlement Class Members with all relevant information and documents, including the Settlement Agreement, Claim Form, Postcard Notice, Long Form Notice, the Preliminary Approval Order, Consolidated Class Action Complaint, (on its URL landing page) the date, time, and place of the Final Approval Hearing, and (when filed) the Application for Attorneys' Fees, Costs, and Service Awards. *Id.* ¶ 81. The Settlement Website shall also provide the toll-free telephone number and mailing address through which Class Members may contact the Settlement Administrator directly. *Id*. The Settlement Administrator shall ensure the Settlement Website includes the Court-approved online Claim Form that can be submitted directly on the Settlement Website or in printable version that can be sent by U.S. Mail to the Settlement Administrator. *Id*.

The Notice Program also includes a Long Form Notice, attached as Exhibit 2 to the Agreement, to be posted on the Settlement Website and made available by mail to Settlement Class Members on request to the Settlement Administrator. *Id*. ¶¶ 37, 83. The Long Form Notice shall contain additional information, including the procedures for Settlement Class Members to opt-out of the Settlement Class or object to the Settlement and/or the Application for Attorneys' Fees, Costs, and Service Awards, and the Postcard Notice shall direct Settlement Class Members to review the Long Form Notice to obtain opt-out and objection instructions. *Id.* ¶¶ 834, 84.

3. ***Claims Process:*** The Claims Process is structured to ensure all Settlement Class Members have adequate time to review the Settlement terms; compile documents supporting their Claim for Cash Payment A – Documented Losses, if elected; submit Claims; and decide whether

to opt-out or object to the Settlement. Joint Decl. ¶ 27. Claim Forms (mail or online) are due to the Settlement Administrator by the Claim Form Deadline (15 days before the initial scheduled Final Approval Hearing). SA ¶ 21. The Claim Form, attached as Exhibit 3 to the Agreement, is in plain language for easy completion. Joint Decl. ¶ 27. The Settlement Administrator will process Claim Forms in a rational, responsive, cost effective, and timely manner and use all reasonable efforts to review submitted Claim Forms. SA ¶¶ 90–91.

4. ***Opt-out and Objection Procedures:*** Under the proposed Settlement, members of the Settlement Class may opt-out of the Settlement by mailing a request to opt-out to the Settlement Administrator postmarked on or before the Opt-Out Deadline. *Id*. ¶¶ 45, 83. To be valid, opt-out request must be personally signed by the individual requesting exclusion and contain the requestor's name, address, telephone number, and email address (if any), the title of the Action, and a statement indicating a request to be excluded from the Settlement Class. *Id.* ¶ 83. Requests to opt out may only be done on an individual basis, and no person may request to be excluded from the Settlement Class through "mass" or "class" opt outs. *Id*. Any Settlement Class Member who does not timely and validly request to opt-out shall be bound by the terms of the Agreement even if that Settlement Class Member does not submit a Valid Claim. *Id.*

The Settlement also provides procedures for Settlement Class Members to object to the Settlement or the Application for Attorneys' Fees, Costs, and Service Awards. Any Settlement Class Member seeking to object to the Settlement must file his or her objection with the Court, and send the same by U.S. Mail to Class Counsel, Defendant's Counsel, and the Settlement Administrator. *Id.* ¶ 84. For an objection to be considered, it must be submitted on or before the Objection Deadline, and the objector must not have excluded him/herself from the Settlement

Class. *Id.* ¶ 84. To be considered valid, an objection must also contain all information required under the Agreement. *See id.* ¶ 8.

The Objection Deadline and the Opt-Out Deadline are both the date that is 30 days before the initial scheduled Final Approval Hearing. *Id.* ¶¶ 44, 45. These dates are specifically calculated to provide sufficient time to access and review the Settlement documents, including the motion for Attorneys' Fees, Costs, and Service Awards, to be filed no later than 10 days before the Objection Deadline and the Opt-Out Deadline, and posted on the Settlement Website. Joint Decl. ¶ 28.

**D. Fees, Costs, and Service Awards**

1. ***Service Awards***: The Settlement Agreement provides that Class Counsel and Class Representatives may seek reasonable Service Awards for the Class Representatives of up to $2,500.00 each. SA ¶ 105. The Service Awards are meant to compensate Class Representatives for their efforts in this Action, including serving as named Plaintiffs, assisting in Class Counsel's investigation, maintaining contact with Class Counsel during factual investigations and Settlement negotiations, reviewing case documents, being prepared to assist with discovery, and answering Class Counsel's questions throughout the matter. Joint Decl. ¶ 14. The request for Service Awards shall be made with the Application for Attorneys' Fees, Costs, and Service Awards, filed no later than 10 days before the Opt-Out and Objection Deadline and posted on the Settlement Website. *Id*. ¶ 28. The Parties did not discuss Service Awards to Class Representatives until after the substantive terms of the Settlement regarding benefits to the Settlement Class had been agreed upon. *Id.* ¶ 11.

**2.** ***Attorneys' Fees and Costs*****:** Plaintiffs will move the Court for a reasonable Fee Award and Costs to Class Counsel up to a total of one-third of the Settlement Fund ($250,000.00), plus reimbursement of reasonable litigation expenses. SA ¶ 106. The Parties did not discuss the

payment of attorneys' fees, costs, and/or expenses until after the substantive terms of the Settlement providing benefits to the Settlement Class had been agreed upon, and the Settlement is not contingent on approval of the Application for Attorneys' Fees, Costs, and Service Awards; if the Court denies the request or grants amounts less than what was requested, the remaining provisions of the Agreement shall remain in force. Joint Decl. ¶ 11.

## IV. ARGUMENT AND MEMORANDUM OF LAW

The preliminary approval stage provides a forum for the initial evaluation of a settlement, and where no class has been previously certified, a determination as to whether a proposed settlement class should be certified. 2 Newberg & Conte, *Newberg on Class Actions* §§ 11.22, 11.27 (3d ed. 1992). Federal Rule of Civil Procedure 23(e) provides that a class action may not be settled without the approval of the court upon finding that the proposed settlement is fundamentally fair, reasonable, and adequate. Fed. R. Civ. P. 23(e); *see also Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38, 42 (6th Cir. 1990) (citing *United States v. Jones & Laughlin Steel Corp.*, 804 F.2d 348, 351 (6th Cir.1986)); *Thompson v. Seagle Pizza, Inc.,* No. 3:20-cv-16, 2022 WL 1431084, at *3 (W.D. Ky. May 5, 2022).

"'Before the Court can preliminarily approve [a] class action settlement, it must preliminarily certify the class under Rule 23(a) and (b) of the Federal Rules of the Civil Procedure, appoint class counsel, and approve the class representative.'" *Ware v. CKF Enterprises, Inc.,* No. 5:19-cv-183, 2020 WL 2441415, at *7 (E.D. Ky. May 12, 2020) (quoting *Peck v. Air Evac. EMS, Inc.*, No. 5: 18-cv-615, 2019 WL 3219150, at *2 (E.D. Ky. Jul. 17, 2019)). "Approval of a class action settlement involves two-stages: (1) The judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing; and (2) If so, the final

decision on approval is made after the hearing." *Green v. Platinum Restaurants Mid-Am. LLC*, No. 3:14-cv-439, 2022 WL 1240432, at *2 (W.D. Ky. Apr. 27, 2022) (quotations omitted).

"At the stage of preliminary approval, the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval." *Lott v. Louisville Metro Gov't,* No. 3:19-cv-271, 2023 WL 2562407, at *1 (W.D. Ky. Mar. 17, 2023) (quoting *Spine & Sports Chiropractic, Inc. v. ZirMed, Inc.*, No. 3:13-cv-00489, 2015 WL 1976398, at *1 (W.D. Ky. May 4, 2015)). Rather, "[c]ourts apply a degree of scrutiny sufficient to avoid 'rubber-stamp[ing]' a proposed settlement agreement, while still being 'mindful of the substantial judicial processes that remain to test the assumptions and representations upon which the [proposed settlement agreement] are premised.'" *Lott*, 2023 WL 2562407, at *1. *See also Moeller v. Wk. Publications, Inc.*, 649 F. Supp. 3d 530, 537 (E.D. Mich. 2023) (quoting *Garner Properties & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 626 (E.D. Mich. 2020)) ("The question at the preliminary-approval stage is 'simply whether the settlement is fair enough' to begin the class-notice process.").

The proposed Settlement here is fair, reasonable, and adequate, providing meaningful and immediate relief to the Settlement Class. Accordingly, the Court should provisionally certify the Settlement Class and grant Preliminary Approval of the Settlement.

**A. The Court Should Certify the Proposed Settlement Class for Settlement Purposes.**

Before granting Preliminary Approval of the proposed Settlement, the Court must determine the proposed Settlement Class is appropriate for certification. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Class certification is proper if the proposed class satisfies the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a), as well as one requirement of Rule 23(b). Fed. R. Civ. P. 23(a), (b). Because they seek certification

under Rule 23(b)(3), Plaintiffs must demonstrate common questions of law or fact predominate and a class action is the superior device to adjudicate the claims.[3] *Amchem*, 521 U.S. at 615–16.

District courts have broad discretion to determine whether certification is appropriate. *See In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013). Where, as here, a litigation class has not been certified, the Court considers whether "it likely will be able, after the final hearing, to certify the class." Fed. R. Civ. P. 23(e)(1) advisory comm. note to 2018 amend.; *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,* 330 F.R.D. 11, 28 (E.D.N.Y. 2019) (discussing standard for preliminary approval under "new Rule 23(e)").

Despite the necessarily rigorous analysis at the preliminary approval stage in disputed matters, class actions are regularly certified for settlement. In fact, similar data breach cases have been certified—on a *national* basis—including the record-breaking settlement in *In re Equifax, Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT (N.D. Ga. 2019). *See also, e.g.*, *Tate v. Eyemed Vision Care, LLC*, 2025 U.S. Dist. LEXIS 145042, at *23 (S.D. Ohio July 29, 2025); *Smith v. Specialty Networks LLC*, 2025 U.S. Dist. LEXIS 134484, at *27 (E.D. Tenn. July 15, 2025); *In re Cinfed Fed. Credit Union Data Breach Litig*., 2025 U.S. Dist. LEXIS 109746, at *47 (S.D. Ohio June 10, 2025); *In re Wasserstrom Holdings, Inc. Data Breach Litig*., 2025 U.S. Dist. LEXIS 105490, at *19 (S.D. Ohio Apr. 11, 2025); *In re Target Corp. Customer Data Sec. Breach Litig.*, 309 F.R.D. 482 (D. Minn. 2015). This case is no different.

***1. Settlement Class Members Are Too Numerous to Be Joined.***

Class certification requires the class to be so numerous that their joinder would be "impracticable." Fed. R. Civ. P. 23(a)(1). "'[W]hile there is no strict numerical test, 'substantial'

[3] When evaluating certification of a settlement class, manageability is not a concern because there will be no trial. *Amchem*, 521 U.S. at 620.

numbers usually satisfy the numerosity requirement.'" *Ware,* 2020 WL 2441415, at *8 (quoting *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006)). *See also Curry v. SBC Commc'ns, Inc.*, 250 F.R.D 301, 310 (E.D. Mich. 2008) ("In most cases, a class in excess of forty members will do."). Here, the putative Settlement Class consists of approximately 39,642 persons, which easily satisfies this requirement. SA ¶ 3.

***2. There Are Common Questions of Law and Fact.***

Rule 23(a)(2) requires the presence of common questions of law or fact. "'Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury,' but 'this does not mean merely that they have all suffered a violation of the same provision of law.'" *Ware,* 2020 WL 2441415, at *8 (citation modified) (quoting *Walmart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011)). "'The commonality test is qualitative, rather than quantitative, that is, there need be only a single issue common to all members of the class.'" *Peck*, 2019 WL 3219150, at *3 (quoting *In re American Medical Sys.*, 75 F.3d 1069, 1080 (6th Cir. 1996)). The common questions in this case include, *inter alia*, whether Defendant had a duty to use reasonable care in safeguarding Plaintiffs' and Settlement Class Members' Private Information; whether Defendant failed to implement and maintain reasonable security practices appropriate to the nature and scope of the Private Information compromised; whether Defendant was negligent in securing Private Information; whether Defendant breached contract promises to safeguard Private Information; whether Defendant's notice of the Data Incident was reasonable; the proper damages measure; and whether Plaintiffs and the Settlement Class are entitled to damages and/or injunctive relief.

This requirement is, therefore, satisfied for settlement purposes. *See In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.,* No. 3:08-md-01998, 2009 WL 5184352, at *3 (W.D. Ky.

Dec. 22, 2009) (finding list of similar common questions satisfied commonality for purposes of data breach settlement class certification).

***3. Plaintiffs' Claims Are Typical of the Settlement Class.***

A class representative's claims must be typical of those of other class members. Fed. R. Civ. P. 23(a)(3). Typicality assesses "whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998). Plaintiffs satisfy the typicality requirement where their "claim arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007). The claims need not be identical; rather, they need only "arise from the same course of conduct." *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir. 1997).

Plaintiffs and Settlement Class Members have the same types of claims, against the same Defendant, stemming from the same alleged violations, related to the same Data Incident. Typicality is thus established. *See, e.g., Peck,* 2019 WL 3219150, at *3 (typicality met where class representative "was subject to the same overtime provisions as the other members of the putative class and his injury is directly related to the wrong of the class"); *Countrywide*, 2009 WL 5184352, at *3 (typicality satisfied where "all class members had their private information compromised, and their claims arise from the same course of uniform conduct of [the defendant].").

***4. Plaintiffs and Class Counsel Will Adequately Represent the Settlement Class.***

The proposed class representatives must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). The Sixth Circuit has "'articulated two criteria for determining adequacy of representation: '1) the representative must have common interests with unnamed

members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *Ware,* 2020 WL 2441415, at *9 (quoting *In re Am. Med. Sys., Inc*., 75 F.3d at 1083). Both criteria are satisfied as to Class Counsel and proposed Class Representatives.

a. <u>Class Counsel Are Adequate</u>

Rule 23(g) sets forth the criteria for evaluating Class Counsel's adequacy:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class…

Fed. R. Civ. P. 23(g)(1)(A).

Here, proposed Class Counsel—Mariya Weekes of Milberg, PLLC; Jeff Ostrow of Kopelowitz Ostrow, P.A.; William B. Federman of Federman & Sherwood; Raina Borrelli of Strauss Borrelli PLLC; and Grayson Wells of Stranch, Jennings & Garvey, PLLC—are well qualified to serve the Settlement Class. *See* Joint Decl. ¶ 31. Indeed, the Court previously designated Class Counsel as interim co-lead counsel in its November 25, 2025 Order (Dkt. No. 27). Collectively, Class Counsel have decades of experience successfully litigating complex class actions, including in numerous data breach cases. *See generally* ECF 20, pp. 9, *et seq*. Adequacy is satisfied here. *See Countrywide*, 2009 WL 5184352, at *5 ("Plaintiffs' Counsel assert extensive experience in class litigation, including in the area of data breaches. Courts have previously approved class counsel with experience in conducting class actions as adequate.").

b. <u>Class Representatives are Adequate.</u>

Plaintiffs have agreed to serve in a representative capacity, communicated diligently with their attorneys and Class Counsel during their factual investigation and Settlement negotiations,

gathered and provided relevant documents, and assisted in drafting the operative complaint. Joint Decl. ¶ 14. The proposed Class Representatives and Settlement Class Members "share the common goal of maximizing recovery for the class and that there is no conflict between them." *Thacker v. Chesapeake Appalachia, L.L.C.,* 259 F.R.D. 262, 268 (E.D. Ky. 2009). Plaintiffs also "'vigorously prosecute[d] the interests of the class through qualified counsel.'" *Davis v. Omnicare, Inc.,* No. 5:18-cv-142, 2021 WL 4188053, at *4 (E.D. Ky. Sept. 14, 2021) (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)). Plaintiffs are therefore adequate Class Representatives. *See Peck,* 2019 WL 3219150, at *4 (adequacy satisfied where "[t]he named plaintiff in this action is a member of the class, he suffered the same injury as the unnamed class members, and he possesses the same interest in receiving his past overtime compensation.").

***5. Rule 23(b)(3)'s Requirements Are Met***

After satisfying Rule 23(a), a plaintiff must also satisfy one of the three requirements of Rule 23(b) for a court to certify a class. Fed. R. Civ. P. 23(b); *Merenda v. VHS of Michigan, Inc.*, 296 F.R.D. 528, 536 (E.D. Mich. 2013). Plaintiffs seek certification under Rule 23(b)(3), which requires that (i) common questions of law and fact predominate over individualized ones, and that (ii) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). As set forth below, the predominance and superiority requirements are met here.

a. <u>Common Issues of Law and Fact Predominate for Settlement Purposes</u>

"The 'predominance' inquiry requires the Court "to assess the legal or factual questions that qualify each class member's case as a genuine controversy ... and assess whether those questions are subject to generalized proof, and thus applicable to the class as a whole.'" *Ware,* 2020 WL 2441415, at *9 (quoting *Sandusky Wellness Center, LLC v. ASD Specialty Healthcare,*

*Inc.*, 863 F.3d 460, 468 (6th Cir. 2017)); *see also Beattie*, 511 F.3d at 564. Predominance is met if a single factual or legal question is "at the heart of the litigation." *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). Thus, predominance is ordinarily satisfied, for settlement purposes where claims arise from the defendant's common conduct. *See, e.g.*, *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 299-300 (3d Cir. 2011) ("[T]he focus is on whether the defendant's conduct was common as to all of the class members.").

Predominance is satisfied here. Whether Defendant violated the various laws and duties alleged is a question that is common to all Settlement Class Members; "The proof required focuses on Defendant's conduct, not on the conduct of individual class members." Countrywide, 2009 WL 5184352, at *6; *see also In re Wawa, Inc. Data Sec. Litig.,* No. 19-cv-6019, 2021 WL 3276148, at *4 (E.D. Pa. July 30, 2021) ("In this case, there is a myriad of questions of law and fact that predominate. These include: whether Wawa owed a duty to class members to safeguard their payment card information; whether Wawa breached that duty . . . "). These include the legal and factual questions outlined above, including but not limited to whether Defendant was required, and failed, to adequately protect the Settlement Class's Private Information.

b. A Class Action is a Superior Means of Resolving this Controversy

Rule 23(b)(3)'s superiority inquiry "requires a plaintiff to show "'that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *In re Fam. Sols. of Ohio, Inc.,* No. 21-cv-0303, 2022 WL 13915151, at *3 (6th Cir. June 17, 2022) (quoting FED. R. CIV. P. 23(b)(3)). "The superiority requirement of Rule 23(b)(3) is met if the class action is a better way than individual litigation to adjudicate a claim." *Calloway v. Caraco Pharm. Labs., Ltd.*, 287 F.R.D. 402, 407–08 (E.D. Mich. 2012). This is especially true in situations which "vindicat[e] the rights of groups of people who individually would be without effective

strength to bring their opponents into court at all." *Amchem*, 521 U.S. at 617. As the Supreme Court has articulated, "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action." *Amchem*, 521 U.S. at 617.

Here, given the relatively low value of the individual claims, Settlement Class Members are unlikely to bring (and have not brought) individual lawsuits against Defendant. Furthermore, because the Settlement Class consists of nearly 40,000 individuals, class-wide resolution of their claims in a single action far more efficient than individual lawsuits. *See Ware,* 2020 WL 2441415, at *10 (superiority satisfied where "[t]here is no indication that any individual class members have instituted their own individual claims regarding this matter" and no indication that the class action "would be difficult to manage"); SA ¶ 3.

For these reasons, consistent with Rule 23(e)(1)(B), the Court should certify the Settlement Class for purposes of settlement.

**B. The Settlement is Fair, Reasonable, and Adequate, Warranting Preliminary Approval.**

On a motion for preliminary approval, courts recognize an "especially strong" presumption in favor of voluntary settlement agreements in class actions, "where substantial judicial resources can be conserved by avoiding formal litigation.'" *Mullins v. Data Mgmt. Co*., 2021 U.S. Dist. LEXIS 124891, at *12 (S.D. Ohio June 21, 2021) (quoting *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010)). Accordingly, at the preliminary approval stage, the bar to meet the fair, reasonable, and adequate standard is lowered. *See, e.g.*, *Garner Properties & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 621 (E.D. Mich. Jan. 17, 2020); *Lott v. Louisville Metro* Gov't, 2023 U.S. Dist. LEXIS 45228, at *2–3 (W.D. Ky. Mar. 17, 2023) ("At the stage of preliminary

approval, the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval.") (internal citation omitted).

Rule 23(e)(2) sets forth factors to assist the Court in determining whether a settlement is fair, reasonable, and adequate:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Further, the Sixth Circuit has raised additional factors as to whether a class settlement is fair, reasonable, and adequate. *See* Memo. Op. and Ord., *Lurry v. Pharmerica Corp*., Case No. 3:23-cv-297-RGJ (W.D. Ky. Jan. 12, 2026) (Doc. No. 151) (citing *McKnight v. Erico Int'l Corp*., 655 F. Supp. 3d 645, 655 (N.D. Ohio 2023)). The Sixth Circuit factors are as follows:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) ("*UAW*"). "[I]n considering whether to approve the parties' proposed settlement, a District Court in the Sixth Circuit should look to both the factors found in Rule 23 as well as the Sixth Circuit's traditional factors." *Doe v. Ohio,* No. 2:91-cv-00464, 2020 WL 728276, at *3 (S.D. Ohio Feb. 12, 2020) (citations omitted); *see also Wilson v. Anthem Health Plans of Kentucky, Inc.,* No. 3:14-cv-743, 2019 WL 6898662, at *3 (W.D. Ky. Dec. 18, 2019)

(quoting Federal R. Civ. P. 23(e) advisory comm. note to 2018 amendment) ("The Advisory Committee, in amending Rule 23(e), did not intend to displace factors developed by the circuit courts in deciding whether to approve a proposed settlement agreement, but rather to 'focus the court . . . on the core concerns . . . that should guide' the court's determination.").

Application of both the Rule 23(e)(2) and the Sixth Circuit's considerations demonstrates the Settlement is fair, reasonable, and adequate and should be preliminarily approved by the Court.

**1. *The Likelihood of Success on the Merits***

"The "likelihood of success on the merits" is the most important factor and warrants discussion before the others." *Ware*, 2020 WL 2441415, at *11 (citations omitted). Courts, however, are "not required 'to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.'" *Ditsworth v. P & Z Carolina Pizza*, No. 1:20-cv-00084, 2021 WL 2941985, at *2 (W.D. Ky. July 13, 2021) (quoting *Officers for Just. v. Civ. Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)).

Here, Plaintiffs faced significant risks as to the merits of their case. Defendant would have surely filed a motion to dismiss, the outcome of which is by no means guaranteed. Even if Plaintiffs prevailed at the pleading stage, Defendant would have vigorously opposed class certification. Joint Decl. ¶ 16. Other district courts have found such risks and uncertainty support settlement approval in comparable data breach class actions. *See, e.g. Cheryl Gaston v. FabFitFun, Inc.*, No. 2:20-CV-09534, 2021 WL 6496734, at *3 (C.D. Cal. Dec. 9, 2021) (collecting cases and concluding, "Historically, data breach cases have experienced minimal success in moving for class certification."); *Gordon v. Chipotle Mexican Grill, Inc.,* No. 17-cv-01415, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases such as the instant case are particularly risky,

expensive, and complex, and they present significant challenges to plaintiffs at the class certification stage.”). Data breach cases in particular are especially risky, expensive, and complex. *In re Sonic Corp.*, 2019 WL 3773737, at *7. This factor thus supports Preliminary Approval.

**2. *Class Representatives and Class Counsel Adequately Represented the Settlement Class.***

Under Rule 23(e)(2)(A), the Court considers whether the class representatives and class counsel adequately represented the class. Fed. R. Civ. P. 23(e)(2)(A). As discussed in more detail below, proposed Class Representatives and Class Counsel have absolutely done so here. Class Counsel have handled this matter on a contingency basis since September 2025, and have been able to secure a nationwide Settlement providing substantial value to the Settlement Class, including Cash Payments and forward-looking Credit Monitoring. *See* Joint Decl. ¶ 24. Accordingly, this factor supports Preliminary Approval.

**3. *The Proposed Settlement Is the Product of Arms-Length Negotiations Among Experienced Counsel.***

Rule 23(e)(2)(B) asks whether a proposed settlement was negotiated at arm’s length. As discussed above, the Settlement Agreement is the product of extensive negotiations among experienced counsel, following the exchange of informal discovery regarding the Data Incident, including as to how the breach occurred, who was involved, the specific data elements impacted, liability, and damages, the impacted individuals, damage-related issues, and Defendant’s financial condition. SA ¶ 8; Joint Decl. ¶¶ 8–9. Armed with this pivotal information, the Parties’ respective counsel were able to vigorously advance their clients’ positions at arm’s length. *Id*. Ultimately, the Parties were able to reach an agreement in principle as to substantive benefits for the Settlement Class. *Id*. ¶ 10. Only thereafter did the Parties then discuss attorneys’ fees, costs, or Service

Awards. *Id.* ¶ 11. The Parties also expended considerable time fleshing out the precise language of the Settlement Agreement. *Id.*.

For this factor, "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008) (citation omitted). There is no evidence of any collusion related to the Settlement here, nor could there be, as it was procured after hard-fought negotiations through arm's length discussions. Joint Decl. ¶ 9. All in all, this is further strong evidence of the Settlement's fairness.

**4. *The Relief Under the Proposed Settlement Is Adequate.***

In determining whether the class-wide relief is adequate under Rule 23(e)(2)(C), the Court considers "the costs, risks, and delay of trial and appeal"; "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims"; "the terms of any proposed award of attorney's fees, including timing of payment"; and "any agreement required to be identified under Rule 23(e)(3)."[4] Fed. R. Civ. P. 23(e)(2)(A)-(D).

Here, the parties had a detailed understanding of their respective arguments and defenses heading into Settlement negotiations by virtue of having received significant informal discovery concerning the Data Incident, as described in detail above. Joint Decl. ¶ 8. In contrast to the uncertainty and delays attendant to protracted litigation, the Settlement "provides a significant, easy-to-obtain benefit to class members." *In re Haier Freezer Consumer Litig.*, 2013 WL 2237890, at *4 (N.D. Cal. May 21, 2013); *see also Ebarle v. Lifelock, Inc.*, 2016 WL 234364, at *8 (N.D. Cal. Jan. 20, 2016) (settlement that provides immediate benefits to class has value compared to the

---

[4] There are no side agreements to disclose under Rule 23(e)(3). *See* Joint Decl. ¶ 19.

risk and uncertainty of continued litigation). And, as mentioned, data breach cases are especially risky, expensive, and complex. *See In re Sonic Corp.*, 2019 WL 3773737, at *7; Joint Decl. ¶ 17.

As to the other considerations under Rule 23(e), the Settlement's proposed method of distributing relief to the Settlement Class is not unduly burdensome, yet deters fraudulent Claims. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii). All Settlement Class Members will be entitled to make a Claim for Cash Payment B – Alternate Cash and receive monetary payments without submitting documentary proof. SA ¶ 72. In the alternative, Settlement Class Members who have actually incurred unreimbursed, documented losses connected to the Data Incident (and, therefore, are likely to have records of such an event) may recover up to $3,500.00 per Claimant by electing Cash Payment A – Documented Losses and submitting required documentation. *Id.* ¶ 72(a). Further, all Settlement Class Members may submit Claims for two years of Credit Monitoring services. *Id.* ¶ 71(c).

Finally, the amounts Class Counsel intends to seek for attorneys' fees and costs are reasonable. As set forth in the Agreement, Class Counsel will seek attorneys' fees of up to one-third of the Settlement Fund, or $250,000.00, plus reimbursement of reasonable litigation costs. *Id*. ¶ 106. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii); *Ware,* 2020 WL 2441415, at *15 ("[O]ne-third of the common fund is a reasonable fee in this case for the purposes of Rule 23."). The proposed Preliminary Approval Order requires Plaintiffs to file the Application for Attorneys' Fees, Costs, and Service Awards at least 15 days before the Opt-Out Deadline and Objection Deadline so that Settlement Class Members will have a fair opportunity to review these requests. Joint Decl. ¶ 28.

**5. *The Settlement Treats Settlement Class Members Equitably.***

"A district court's 'principal obligation' in approving a plan of allocation 'is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund.'" *Sullivan*

*v. DB Invs., Inc.*, 667 F.3d 273, 326 (3d Cir. 2011) (quoting *Walsh v. Great Atl. & Pac. Tea Co., Inc.*, 726 F.2d 956, 964 (3d Cir. 1983)). This requirement can be satisfied even where, like here, class members may be entitled to receive different amounts. *Peck v. Air Evac. EMS, Inc.*, No. 5: 18-cv-615, 2019 WL 3219150, at *7 (E.D. Ky. Jul. 17, 2019) ("While the class members will receive differing amounts, the amount that each class member will receive is based on the actual number of unpaid overtime hours that each person worked.").

Here, all Settlement Class Members are eligible to file Claims for the same Settlement Class Member Benefits, if applicable. All Settlement Class Members may submit Claims for Credit Monitoring Services. SA ¶ 72(c). Additionally, all Settlement Class Members with documentary evidence of any losses traceable to the Data Incident may request reimbursement for those expenses up to $3,500.00 per Claimant. *Id* ¶ 72(a). As an alternative to Cash Payment A – Documented Losses, All Settlement Class Members may Claim Cash Payment B – Alternate Cash and receive a *pro rata* Cash Payment, regardless of whether they suffered documented out-of-pocket loss. *Id.* Thus, the Settlement ensures all Settlement Class Members are treated equitably.

**6. *The Risk of Fraud or Collusion***

"Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008) (citation omitted); *see also Green,* 2022 WL 1240432, at *4 (quoting *Thacker v. Chesapeake Appalachia*, L.L.C., 695 F. Supp. 2d 521 (E.D. Ky. 2010)) (same). There is no evidence of any collusion related to the Settlement here, nor could there be, as it was procured through protracted, adversarial negotiations and arm's length discussions, assisted by informal discovery. Joint Decl. ¶ 8. All in all, this is further, strong evidence of the Settlement's fairness.

### 7. *The Complexity, Expense and Likely Duration of Litigation*

As discussed above, the parties have evaluated the risks, delay, and complexity of this case. *Id.* ¶¶ 15, 17. Courts have recognized that "most class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them." *Ditsworth*, 2021 WL 2941985, at *3 (quoting *In re Telectronics,* 137 F. Supp. 2d at 1013). Data breach cases in particular are especially risky, expensive, and complex. *See In re Sonic Corp.*, 2019 WL 3773737, at *7. Here, this case—as in other data breach cases—is complex both on legal matters and the significant technical issues that Class Counsel must navigate and explain through expensive experts to a lay jury. In addition to these technical concerns, Plaintiffs would have to file a motion for class certification, survive summary judgment, and prevail at trial and through appeals. Although Plaintiffs and Class Counsel strongly believe in the merits of the claims asserted in this action, they are cognizant of these risks. Joint Decl. ¶ 16. Had the Parties not efficiently resolved the Action, it may have been years before the case went to trial, and there was always a risk of non-recovery. *Id.* ¶ 21. In contrast to lengthy and complex proceedings, the proposed Settlement provides immediate and substantial Settlement Class Member Benefits to victims of the Data Incident. *Id.* ¶ 17. Given that reality, "an early resolution is beneficial to the class and the defendant." *Peck*, 2019 WL 3219150, at *7. As both the complexity and the length of future proceedings in this Action would be great, this further demonstrates the fairness, reasonableness, and adequacy of the hard-fought Settlement. *See Wilson,* 2019 WL 6898662, at *5.

### 8. *The Amount of Discovery Engaged in by the Parties*

"In considering whether there has been sufficient discovery to permit the plaintiffs to make an informed evaluation of the merits of a possible settlement, the court should take account not only of court-refereed discovery but also informal discovery in which parties engaged both before

and after litigation commenced." *Ditsworth,* 2021 WL 2941985, at *3 (quoting *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 WL 3966253, at *4 (S.D. Ohio Aug. 17, 2018)). "[T]he absence of formal discovery is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties." *Ditsworth,* 2021 WL 2941985, at *3; *see also In re Wawa, Inc.*, 2021 WL 3276148, at *9 n. 4 (citation omitted) ("Although the Consumer Plaintiffs and Wawa did not engage in 'formal' discovery, that is not necessarily an obstacle for preliminary approval of a class action settlement, especially where, as here, the parties have exchanged important informal discovery.").

As discussed above, Defendant provided Plaintiffs with sufficient information through informal discovery responses in connection with Settlement negotiations, including for example, information about the size and scope of the Settlement Class as well as Private Information allegedly compromised, which confirm the Settlement is fair, reasonable and adequate. Joint Decl. ¶ 12. This further supports Preliminary Approval.

**9. *The Opinions of Class Counsel and Class Representatives***

"'The endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement.'" *Green,* 2022 WL 1240432, at *5 (quoting *UAW v. Ford Motor Co.*, No. 07-cv-14845, 2008 WL 4104329, at *26 (E.D. Mich. Aug. 29, 2008)). Here, "the experienced attorneys on each side, after assessing the relative risks and benefits of litigation, believe that the settlement is fair and reasonable." *Wilson,* 2019 WL 6898662, at *6. Here, Class Counsel and Class Representatives strongly support the Settlement. Joint Decl. ¶ 20.

**10. *The Reaction of Absent Settlement Class Members***

Since Notice to the Settlement Class has not yet issued, "the reaction of absent class members does not yet weigh one way or the other in determining whether settlement is

appropriate." *Green*, 2022 WL 1240432, at *5; *see also Wilson,* 2019 WL 6898662, at *6 ("At the pre-notice stage, the Court does not yet know how absent class members will respond."). Thus, Plaintiffs will address this point in connection with their forthcoming Motion for Final Approval.

**11. *The Public Interest***

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Green,* 2022 WL 1240432, at *5 (quoting *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003)). *See also Ditsworth,* 2021 WL 2941985, at *4 (quotations omitted) ("Class counsel took on a [ ] case that an individual class member would almost certainly never file on [his or her] own. The Settlement Class, moreover, obtained recovery on a class-wide basis for an alleged injury that, but for this litigation, would almost certainly have gone uncompensated."). Here, it is virtually certain no other case would be brought to pursue these claims on an individual basis. Settlement at this stage provides concrete relief to the Settlement Class while conserving Court and Party resources.

**C. The Notices and Notice Program Should Be Approved.**

Should the Court grant Preliminary Approval of the Settlement, it must then "direct notice in a reasonable manner to all class members who would be bound by the proposal.'" *Wilson*, 2019 WL 6898662, at *6 (quoting Fed. R. Civ. P. 23(e)(1)). The notice should be "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Peck*, 2019 WL 3219150, at *8 (quoting *UAW*, 497 F.3d at 629).

The forms of Notice attached as Exhibits 1-3 to the Settlement Agreement (Postcard Notice, Long Form Notice, and Claim Form) satisfy with Rule 23 and the due process mandates.

Using plain language, the Notices include all information required under Rule 23(c)(2)(B). The Notice Program provides direct Postcard Notice, which contains the material terms of the Settlement; a tear-off Claim Form; the Claim Form Deadline; the Opt-Out Deadline; Objection Deadline; the Final Approval Hearing date; the Settlement Class toll-free telephone number, and the Settlement Website. SA ¶ 81. Further, the Settlement Website will post the Claim Form, the Long Form Notice, the Agreement, key submissions in the Action including the Application for Attorneys' Fees, Costs, and Service Awards once it is filed, and procedures to opt-out of or object to the Settlement. The Settlement Administrator will also establish a toll-free number for Settlement Class Members to call with questions. SA ¶ 78(f). This Notice Plan provides the best Notice practicable under the circumstances and should be approved. *See In re Ins. Broker Antitrust Litig.*, 297 F.R.D. 136, 152 (D.N.J. 2013) (notice via postcards is sufficient). This Notice Program is consistent with other notice processes that have been approved in data breach cases across the country and in federal courts in Kentucky. Joint Decl. ¶ 26.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the proposed Preliminary Approval Order, attached as Exhibit 4 to the Settlement Agreement, (1) conditionally certifying the proposed Settlement Class for purpose of Settlement; (2) preliminarily approving the Settlement; (3) appointing Mariya Weekes of Milberg PLLC; Jeff Ostrow of Kopelowitz Ostrow, P.A.; William B. Federman of Federman & Sherwood; Raina Borrelli of Strauss Borrelli PLLC; and Grayson Wells of Stranch, Jennings & Garvey, PLLC as Class Counsel for Settlement purposes; (4) appointing Plaintiffs as Class Representatives; (5) approving the forms and substance of the Notices, Notice Program, Claim Form, and Claims Process; (6) approving the procedures for Settlement Class Members to opt-out of or object to the Settlement; (7) appointing Simpluris,

Inc. as the Settlement Administrator and ordering it to implement the Notice Program; (8) staying the Action pending Final Approval of the Settlement; and (9) scheduling a Final Approval Hearing.

Dated: January 23, 2026.

Respectfully submitted,

*/s/ Jeff Ostrow*
Jeff Ostrow (*Pro hac vice*)
KOPELOWITZ OSTROW P.A.
One West Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
(954) 525-4100
ostrow@kolawyers.com

Grayson Wells (*Pro hac vice*)
STRANCH, JENNINGS & GARVEY, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
(615) 254-8801
gwells@stranchlaw.com

Raina C. Borrelli (*Pro hac vice* forthcoming)
STRAUSS BORRELLI PLLC
One Magnificent Mile
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
(872) 263-1100
(872) 263-1109 (facsimile)
raina@straussborrelli.com

Mariya Weekes (*Pro hac vice*)
MILBERG, PLLC
333 SE 2nd Avenue, Suite 2000
Miami, Florida 33131
(786) 206-9057
(786) 879-7520 (facsimile)
mweekes@milberg.com

William B. Federman (*Pro hac vice*)
FEDERMAN & SHERWOOD
10205 N. Pennsylvania Avenue
Oklahoma City, Oklahoma 73120
(405) 235-1560
(405) 239-2112 (facsimile)
wbf@federmanlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of January, 2026 the foregoing document was filed with the Clerk of the Court using the Court's CM/ECF filing system, which then served all counsel of record.

*/s/ Jeff Ostrow*
Jeff Ostrow