UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

SHANE DAVIS et al., Plaintiffs,

v. Civil Action No. 3:25-cv-563-DJH-CHL

SOUTHERN GRAPHICS, INC., Defendant.

* * * * *

**MEMORANDUM AND ORDER**

Plaintiffs Shane Davis, Linda Greenwood, James Palmer, Richard Bust, and Dara Rojowski filed this purported class action against Defendant Southern Graphics, Inc., seeking to represent a class of Southern Graphics' current and former employees whose private information was compromised by a data breach and alleging negligence, negligence per se, breach of implied contract, breach of fiduciary duty, unjust enrichment, and violation of the Kentucky Consumer Protection Act.[1] (Docket No. 28, PageID.222–37 ¶¶ 171–262) In December 2025, the parties "reached an agreement in principle to settle the action." (D.N. 29, PageID.252) Plaintiffs move for preliminary approval of the proposed class-action settlement. (D.N. 30) Southern Graphics does not oppose the motion. The Court heard oral argument on Plaintiffs' motion on April 22, 2026, and took the matter under advisement. (*See* D.N. 35) After careful consideration, the Court will grant Plaintiffs' motion for the reasons set out below.

**I.**

The following information is set out in the memorandum in support of Plaintiffs' motion, the proposed settlement agreement, and the associated exhibits. (*See generally* D.N. 30; D.N. 30-1; D.N. 30-2) The parties propose the following settlement class: "All living individuals in

[1] Plaintiffs originally filed individual complaints against Southern Graphics that were consolidated into this action by order of the Court in November 2025. (*See* D.N. 27)

the United States whose Private Information was potentially compromised in the Data Incident, including all individuals who were mailed notice of the Data Incident from [Southern Graphics]."[2] (D.N. 30-1, PageID.298) Excluded from the settlement class are "directors and officers of [Southern Graphics], or its respective subsidiaries and affiliated companies"; government entities; and judicial employees affiliated with the present action. (*Id.*) The parties estimate that there are 39,642 members in the class. (*Id.*, PageID.298 ¶ 3)

Under the terms of the proposed settlement, Southern Graphics will contribute $750,000 to a common settlement fund. (*Id.*, PageID.299 ¶ 66) Class members will be eligible to submit claims for (1) two years of one-bureau credit and identity-theft monitoring services and (2) either a documented-loss payment of up to $3,500 per claimant or a pro rata flat-cash payment. (*Id.*, PageID.302–03 ¶ 72; *see also* D.N. 30, PageID.259) To receive a documented-loss payment, the claimant must "submit reasonable documentation supporting the losses." (D.N. 30-1, PageID.302–03 ¶ 72) The proposed settlement agreement allows documentation such as "telephone records, correspondence including emails, or receipts," but does not allow documentation consisting of "personal certifications, declarations, or affidavits" alone. (*Id.*) If a documented-loss claim is rejected by the settlement administrator and not cured by the claimant, the claim will be distributed as though the claimant had selected the pro rata flat-cash payment option. (*Id.*)

[2] The "Data Incident" is defined in the agreement as "the alleged unauthorized access to Defendant's computer network resulting in the acquisition of Settlement Class members' Private Information and discovered by Defendant on or about December 2, 2024." (D.N. 30-1, PageID.293) "Private Information" is defined as "any combination of names, contact information, dates of birth, Social Security numbers, tax identification numbers, driver's license numbers and/or state identification card numbers, financial account and payment card information, passport numbers or other government identification numbers, health information, health insurance information, and any other personally identifiable information that may have been stored within Defendant's information technology systems at the time of the Data Incident." (*Id.*, PageID.296)

The settlement funds will be distributed in the following order: settlement administration costs, class representative awards, court-awarded attorney fees and costs, payment for credit monitoring on all valid claims, payment of claims for documented losses, and payment of claims for pro rata flat cash.[3] (*See* D.N. 30-1, PageID.302) The settlement agreement provides for an award of attorney fees totaling "up to one-third of the [s]ettlement [f]und . . . plus reimbursement of reasonable litigation costs." (D.N. 30-1, PageID.317 ¶ 106) Class counsel also intend to "request a [s]ervice [a]ward for the [c]lass [r]epresentatives in the amount not to exceed $2,500.00 each . . . [, which] shall be separate and apart from their entitlement to [s]ettlement [c]lass [m]ember [b]enefits." (*Id.*, PageID.316 ¶ 105)

The proposed settlement includes a release of claims. Specifically, it provides that upon the Court's final approval of the settlement

> the Releasing Parties shall be deemed to have . . . fully, finally, and forever released, acquitted, relinquished, and completely discharged the Released Parties from any and all Released Claims, including but not limited to any federal or state statutory or common law claims arising out of or relating to the Data Incident that the Releasing Parties may have or had. Each Party expressly waives all rights under California Civil Code section 1542 . . . [and] any law(s) that are comparable in effect to California Civil Code section 1542 . . . .
>
> Plaintiffs and Settlement Class Members stipulate to be and shall be permanently barred and enjoined by Court order from initiating, asserting, or prosecuting any Released Claim against the Released Parties, whether on behalf of Plaintiffs, any Settlement Class Member or others, in any jurisdiction, including in any federal, state, or local court or tribunal.

(*Id.*, PageID.317–18 ¶¶ 108, 110) The "Releasing Parties" are

---

[3] The parties agree that class counsel will oversee settlement administrator Simpluris, Inc., which "shall administer various aspects of the Settlement . . . including, but not limited to, effectuating the Notice Program, handling the Claims Process, administering the Settlement Fund, and distributing the Settlement Class Member Benefits to those who submit Valid Claims." (D.N. 30-1, PageID.304–05 ¶¶ 76–77; *see also id.*, PageID.313–15 (listing reasons and describing process through which settlement administrator can reject or reduce claim payments))

> (i) Plaintiffs and all Settlement Class Members, (ii) each of their respective executors, representatives, heirs, predecessors, assigns, beneficiaries, affiliates, successors, bankruptcy trustees, guardians, joint tenants, tenants in common, tenants by the entireties, agents, attorneys, (iii) any entities in which a Plaintiff and/or other participating Settlement Class Member has or had a controlling interest or that has or had a controlling interest in him, her, or it, (iv) any other person or entity (including any governmental entity) claiming by or through, on behalf of, for the benefit of, derivatively for, or as representative of a Plaintiff and/or any other Settlement Class Member, and all those who claim through them or on their behalf, and (v) the respective past and present directors, governors, executive-committee members, officers, officials, employees, members, partners, principals, agents, attorneys, advisors, trustees, administrators, fiduciaries, consultants, service providers, representatives, successors in interest, assigns, beneficiaries, heirs, executors, accountants, accounting advisors, and auditors of any or all of the above persons or entities identified in (i)-(iv).

(*See id.*, PageID.297–98 ¶ 56) The release does not apply to class members who opt out of the settlement prior to the applicable deadline or to claims to enforce the terms of the settlement agreement. (*See id.*, PageID.318 ¶¶ 109, 111) The "Released Parties" are

> Defendant and its past, present, and future parents, subsidiaries, divisions, departments, affiliates, predecessors, successors and assigns, and any and all of their past, present, and future directors, officers, executives, officials, principals, stockholders, heirs, agents, insurers, reinsurers, members, attorneys, accountants, actuaries, fiduciaries, advisors, consultants, representatives, partners, joint venturers, licensees, licensors, independent contractors, subrogees, trustees, executors, administrators, predecessors, successors and assigns, and any other person acting on Defendant's behalf, in their capacity as such.

(*See id.*, PageID.297 ¶ 55)

The settlement agreement provides that class members will receive a summary postcard notice of the proposed settlement via U.S. mail that will direct them to a settlement website with relevant information and documents, including a long-form notice and the claim form.[4] (*Id.*, PageID.307–08 ¶¶ 80–83) Class members will be able to object to or opt out of the settlement until thirty days before the date of the final fairness hearing. (*Id.*, PageID.295 ¶¶ 44, 45) The

[4] Southern Graphics will provide the settlement administrator with a list of class members and their contact information based on its records. (D.N. 30-1, PageID.292, 307 ¶¶ 23, 79) The settlement administrator will also "perform reasonable address traces for Postcard Notices returned as undeliverable." (*Id.*, PageID.310 ¶ 87)

proposed settlement agreement allows Southern Graphics to terminate the agreement if the number of opt-outs exceeds 5% of the total settlement class. (*Id.*, PageID.320 ¶ 118) Settlement funds will be distributed to class members via electronic payment or paper check.[5] (*Id.*, PageID.314 ¶ 100)

**II.**

"The claims of a 'class proposed to be certified for purposes of settlement' may be settled 'only with the court's approval.'" *Branson v. Alliance Coal*, *LLC*, No. 4:19-CV-155-RGJ-HBB, 2025 WL 1908971, at *3 (W.D. Ky. July 10, 2025) (quoting Fed. R. Civ. P. 23(e)). Under Rule 23(e), "class action settlement approval involves a three-step process: (1) preliminary approval of the proposed settlement, (2) notice of the settlement to all affected class members, and (3) a final approval hearing." *Branson*, 2025 WL 1908971, at *3 (internal quotations omitted). Final approval is warranted only when the Court finds that the proposed class settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To preliminarily approve a settlement and direct notice, the Court must determine that it "will likely be able to" grant final approval and "certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

In making a fairness determination, the Court considers two sets of substantially overlapping factors. *See Macy v. GC Servs. Ltd. P'ship*, No. 3:15-CV-819-DJH-CHL, 2019 WL 6684522, at *2 (W.D. Ky. Dec. 6, 2019). The Court first considers the factors outlined in Rule 23(e), namely, whether

> (A) the class representatives and class counsel have adequately represented the class;

[5] The proposed settlement agreement provides that "240 days following the date Settlement Class Members are sent an email to select their form of payment," any "unclaimed and undeliverable funds shall be treated as residual funds . . . and distributed to an appropriate mutually agreeable *cy pres* recipient to be approved by the Court." (D.N. 30-1, PageID.315 ¶ 101)

> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). In addition, the Court considers several factors articulated by the Sixth Circuit, including

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*See Macy*, 2019 WL 6684522, at *2 (quoting *Pelzer v. Vassalle*, 655 F. App'x 352, 359 (6th Cir. 2016)); *In Re E. Palestine Train Derailment*, 158 F.4th 704 (6th Cir. 2025), *cert. denied sub nom. Sheely v. Feezle*, No. 25-929, 2026 WL 568332 (U.S. Mar. 2, 2026).

**A. Adequate Representation**

The Court first considers whether "the class representative[] and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). This factor weighs in favor of a proposed settlement where the class representative and counsel "extensively litigated th[e] matter through settlement" and "engaged in a significant amount of discovery." *Green v. Platinum Rests. Mid-Am. LLC*, No. 3:14-CV-439, 2022 WL 1240432, at *3 (W.D. Ky. Apr. 27, 2022) (finding adequate representation where "[t]here [wa]s no reason to think that, if the case continued to trial, the parties would stop litigating the case with the same intensity"); *see also Lott v. Louisville Metro Gov't*, No. 3:19-CV-271-RGJ, 2023 WL 2562407, at *2 (W.D. Ky. Mar. 17, 2023). And "[c]ourts presume [that] a settlement resulting from 'extensive negotiations by

experienced counsel' is fair." *Carter v. Paschall Truck Lines, Inc.*, No. 5:18-CV-41-BJB, 2025 WL 899854, at *3 (W.D. Ky. Mar. 25, 2025) (quoting *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 351 (N.D. Ohio 2001)).

Here, class counsel have substantial experience in class-action litigation and data-breach matters. (*See* D.N. 30, PageID.271 ("Collectively, Class Counsel have decades of experience successfully litigating complex class actions, including in numerous data breach cases.")) Class counsel assert that prior to settlement negotiations, they "conducted extensive and lengthy interviews with Plaintiffs and putative Settlement Class Members, analyzed the documents and information produced by Defendant through informal discovery, and developed a thorough understanding of the complex technical issues underlying the claims and defenses in this Action, as well as the applicable laws of Kentucky and other relevant jurisdictions." (D.N. 30-2, PageID.378 ¶ 7) Class counsel represent that they undertook "extensive negotiations" and "expended considerable time" before reaching the proposed settlement agreement. (D.N. 30, PageID.277–78) Nothing suggests that the class representatives and counsel "would stop litigating the case with the same intensity" if the case were to go to trial. *See Green*, 2022 WL 1240432, at *3. Therefore, this factor weighs in favor of preliminary approval. *Id.*; *see also Carter*, 2025 WL 899854, at *2; *see also In re OnePoint Patient Care, LLC., Data Breach Litig.*, No. 3:24-CV-649-RGJ, 2026 WL 74403, at *5 (W.D. Ky. Jan. 9, 2026) (finding factor to weigh in favor of preliminary approval despite the "short amount of time between the filing of this action . . . and the filing of the [preliminary-approval] motion").

**B. Arm's-Length Negotiation**

"Courts presume a settlement resulting from extensive negotiations by experienced counsel is fair." *Carter*, 2025 WL 899854, at *3 (internal quotation omitted). As noted above,

class counsel have substantial experience in class-action and data-breach litigation (*see* D.N. 30, PageID.271). The parties represent that the proposed settlement was reached after "hard-fought negotiations through arm's length discussion" (*id.*, PageID.278), and there is no evidence of collusion. Thus, this factor also supports preliminary approval of the settlement. *See Carter*, 2025 WL 899854, at *3; *see also Green*, 2022 WL 1240432, at *4 ("Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." (citations omitted)).

**C. Adequacy of Relief**

Adequate relief is based on consideration of (1) "the costs, risks, and delay of trial and appeal"; (2) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims"; (3) "the terms of any proposed award of attorney's fees, including timing of payment"; and (4) "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). As previously discussed, because the settlement "result[ed] from extensive negotiations by experienced counsel," the Court "presume[s]" that it is fair. *Carter*, 2025 WL 899854, at *3 (internal quotations omitted). Based on the parties' estimate of 39,642 class members (D.N. 30-1, PageID.298 ¶ 3) and assuming that all class members file valid claims, the gross settlement amount of $750,000 would provide approximately $19 per class member. Various costs, fees, and documented losses are subtracted from the gross settlement amount before it is distributed, however. Specifically, the proposed settlement deducts attorney fees up to $250,000 plus "reasonable litigation costs" (*id.*, PageID.317 ¶ 106); up to $2,500 service awards for each of the five class representatives (*id.*, PageID.316 ¶ 105); and settlement and administration costs (*id.*, PageID.302 ¶ 72). Deducting

these costs leaves each class member with less than $13 to cover documented losses, credit monitoring services, and pro rata distribution of the remaining balance of the settlement fund.[6]

Ultimately, the proposed settlement likely provides adequate relief, at least at the preliminary-approval stage. *See Carter*, 2025 WL 899854, at *2; *Macy*, 2019 WL 6684522, at *1. The proposed settlement provides up to a third of the gross settlement amount for attorney fees (D.N. 30-1, PageID.317 ¶ 106), which is consistent with the fees approved by courts in this district and elsewhere in the Sixth Circuit. *See Green*, 2022 WL 1240432, at *3–4 (collecting cases); *see also Lott*, 2023 WL 2562407, at *3 (same); *McClurg v. Dallas Jones Enters., Inc.*, No. 4:20-CV-201-RGJ-HBB, 2025 WL 1908974, at *3 (W.D. Ky. July 10, 2025) ("[T]he negotiated fee for class counsel is up to one-third (1/3) of the Gross Settlement Amount, which is within an acceptable range." (internal quotations omitted)). Moreover, "[b]ecause they involve new technology and evolving law, the merits of data breach cases like this one are often uncertain." *In re Wasserstrom Holdings, Inc. Data Breach Litig.*, No. 2:23-CV-2070, 2025 WL 1563548, at *7 (S.D. Ohio Apr. 11, 2025) (citations omitted). Class members would thus not be guaranteed any recovery if the case proceeded to trial. *See* Fed. R. Civ. P. 23(e)(2)(C)(1).

The proposed settlement agreement imposes several requirements on objections, namely the requirement that the objector include a list of all prior objections to class-action settlements that they or their counsel have made in the past five years. (*See* D.N. 30-1, PageID.309–10 ¶¶ 85–86) The Court should avoid approval of onerous requirements. *See, e.g.*, *Allicks v. Omni Specialty Packaging, LLC*, No. 4:19-CV-1038-DGK, 2020 WL 5648132, at *7 (W.D. Mo. Sept. 22, 2020) (finding similar requirements to "discourage objections"). But the Court finds sufficient the explanation provided by class counsel during the hearing, which was that the

[6] At the hearing, class counsel estimated a final claims rate of no more than 10% and a total documented-loss claim amount of no more than $20,000.

requirements are intended to identify "serial" objectors. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1260 n.5 (11th Cir. 2021) ("Serial objectors are those who bring objections that are merely boilerplate and immaterial, while their true goal is to get paid some fee to go away." (citation modified)). *But see In re T-Mobile Customer Data Sec. Breach Litig.*, 111 F.4th 849, 857–58 (8th Cir. 2024) (noting that "serial" or "professional" objectors can still file meritorious objections).

The settlement's "proposed method of distributing relief," Fed. R. Civ. P. 23(e)(2)(C)(ii), appears to be effective. (*See* D.N. 30-1, PageID.311–15) As discussed above, relief would be distributed via mailed check or electronic payment. (*See id.*, PageID.314 ¶ 100) Finally, there are no side agreements relating to the proposed settlement. (D.N. 30-2, PageID.380 ¶ 19) In sum, the adequacy-of-relief factor supports preliminary approval of the proposed settlement. *See Carter*, 2025 WL 899854, at *2; *Macy*, 2019 WL 6684522, at *1.

**D. Equitable Treatment**

Next, the Court considers whether the "proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). A proposed settlement "may, in some circumstances, be inequitable if it 'gives preferential treatment to the named plaintiffs.'" *Carter*, 2025 WL 899854, at *3 (quoting *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 755 (6th Cir. 2013)). Although "[s]ervice awards are not prohibited within the Sixth Circuit" when based on a "class representative['s] procured benefits, financial risks, and time expended," "sizable award[s] . . . might reflect inequitable or preferential treatment to the named representative's benefit." *McClurg*, 2025 WL 1908974, at *4 (internal quotations and citations omitted). The Court "should be most dubious of incentive payments when they make the class representatives whole, or . . . even more than whole; for in that case the class representatives have no reason to

care whether the mechanisms available to unnamed class members can provide adequate relief." *Carter*, 2025 WL 899854, at *3 (quoting *Dry Max*, 724 F.3d at 722). Thus, the Court must consider "whether the settlement gives preferential treatment to the named plaintiffs while only perfunctory relief to unnamed class members." *Dry Max*, 724 F.3d at 718 (quotation omitted). In doing so, the Court examines "the extent of [the representatives'] personal involvement in litigating th[e] case and the proportionality of the service award to other class members' recoveries." *McClurg*, 2025 WL 1908974, at *4 (citations omitted).

Although this factor does not weigh strongly against preliminary approval, it will certainly "merit more consideration at the final fairness hearing." *Id.* (citing *Duffy v. Mazda Motor of Am., Inc.*, No. 3:24-CV-388-BJB, 2025 WL 517608, at *3 (W.D. Ky. Feb. 17, 2025)). The proposed settlement provides for a $2,500 service award to each of the five class representatives. (D.N. 30-1, PageID.316 ¶ 105) But as noted above, once attorney fees, expenses, and the contribution award are taken out of the settlement fund, no more than $13 per class member remains.[7] Thus, the "proportionality of the service award to other class members' recoveries," *McClurg*, 2025 WL 1908974, at *4 (citations omitted), suggests that the proposed settlement may give "preferential treatment to the named plaintiffs," *Carter*, 2025 WL 899854, at *3 (citation omitted). Moreover, the Court is concerned that the proposed settlement may provide "only perfunctory relief to unnamed class members." *Dry Max*, 724 F.3d at 718 (quotation omitted).

On the other hand, class counsel state that Plaintiffs have "adequately represented the Settlement Class, including by serving as named Plaintiffs, assisting in Class Counsel's investigation, maintaining contact with Class Counsel during factual investigations and

[7] This figure does not account for any payments of up to $3,500 where the claimant shows documented losses.

Settlement negotiations, reviewing case documents, being prepared to assist with discovery, and answering Class Counsel's questions throughout the matter" (D.N. 30-2, PageID.379 ¶ 14), which may explain "what the service award compensates [the named Plaintiffs] for" so as to justify the disparity. *Carter*, 2025 WL 899854, at *3; *see also McClurg*, 2025 WL 1908974, at *4 (noting that the Court should consider "the extent of [the representatives'] personal involvement in litigating th[e] case"). Such assertions are sufficient at the preliminary-approval stage. *See, e.g.*, *Carter*, 2025 WL 899854, at *3–4 (noting potential inequity of proposed settlement's $10,000 service award but nevertheless granting preliminary approval); *Duffy*, 2025 WL 517608, at *3 ($4,000 service award); *McClurg*, 2025 WL 1908974, at *4 ($15,000 service award). At the final-approval stage, however, Plaintiffs should be prepared to further justify the proposed service award by providing "specific documentation—in the manner of attorney time sheets—of the time [Plaintiffs] actually spent on the case." *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 311 (6th Cir. 2016).

**E. Sixth Circuit Factors**

The Sixth Circuit factors also largely weigh in favor of preliminary approval. First, "[i]n the absence of evidence to the contrary, the court may presume that no fraud occurred and that there was no collusion between counsel." *Crawford v. Lexington-Fayette Urb. Cnty. Gov't*, No. CIV. A. 06-299-JBC, 2008 WL 4724499, at *6 (E.D. Ky. Oct. 23, 2008) (citation omitted). The record contains no such evidence here. And the law in data-breach cases is "evolving" and "uncertain," rendering further litigation complicated and risky, *Wasserstrom Holdings*, 2025 WL 1563548, at *7. (*See also* D.N. 30-2, PageID.379–80 ("The risk[s] of establishing liability, damages, and maintaining the Action as a class action throughout trial are all substantial. Besides the potential that either side will lose at trial, Plaintiffs anticipate substantial additional

costs if litigation continues, including expert witness fees.")) Given this risk, the probability of success on the merits, "which provides a gauge from which the benefits of the settlement must be measured," also weighs in favor of preliminary approval. *Lewis v. Huntington Nat'l Bank*, No. 2:11-CV-00058, 2013 WL 12231327, at *3 (S.D. Ohio May 30, 2013) (internal quotation omitted). In addition, class counsel and the class representatives support the proposed settlement. (*See generally* D.N. 30) Finally, the public interest supports preliminary approval because "[s]ettlement is the preferred means of resolving litigation," and this is especially true for "complex litigation and class action suits because they are notoriously difficult and unpredictable[,] and settlement conserves judicial resources." *Ware v. CKF Enters., Inc.*, No. CV 5:19-183-DCR, 2020 WL 2441415, at *14 (E.D. Ky. May 12, 2020) (quotations omitted); *see also Duffy*, 2025 WL 517608, at *4.

The remaining factors are either irrelevant or inconsequential. Although the parties engaged in only "informal discovery" before initiating settlement negotiations (*see* D.N. 30-1, PageID.351 ("Plaintiffs requested, and Defendant produced[,] informal discovery related to the nature and cause of the Data Incident, the size and scope of the putative class, Settlement Class Members' damages, and Defendant's financial condition.")), formal discovery is not a prerequisite for preliminary approval when the plaintiff has sufficient access to information from other sources. *Does 1-2 v. Déjà vu Servs., Inc.*, 925 F.3d 886, 898–99 (6th Cir. 2019); *see also Ditsworth v. P&Z Carolina Pizza*, No. 1:20-CV-84-GNS, 2021 WL 2941985, at *3 (W.D. Ky. July 13, 2021) ("[T]he absence of formal discovery is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties." (quoting *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 WL 3966253, at *4 (S.D. Ohio Aug. 17, 2018))); *Cook v. Papa John's Paducah, LLC*, No. 5:20-CV-00129 (TBR),

2022 WL 301796, at *3 (W.D. Ky. Feb. 1, 2022) (finding that where "the parties ha[d] engaged in only informal discovery, . . . this factor weigh[ed] only slightly in favor of finding the settlement fair and reasonable"). Thus, this factor does not preclude preliminary approval. *See Ditsworth*, 2021 WL 2941985, at *3; *Cook*, 2022 WL 301796, at *3. As to the final remaining factor, "[t]he 'reaction of absent class members' is not relevant to the preliminary approval stage analysis." *Ware*, 2020 WL 2441415, at *14 n.4; *see Duffy*, 2025 WL 517608, at *4.

**F. Preliminary Class Certification for Settlement Purposes**

Prior to directing notice to the class members, the Court must also conditionally certify the class for settlement purposes. *See* Fed. R. Civ. P. 23(e)(1)(B) (requiring the Court to direct notice if "justified by the parties' showing that the court will likely be able to . . . certify the class for purposes of judgment on the proposal"); *In re Flint Water Cases*, 499 F. Supp. 3d 399, 418 (E.D. Mich. 2021). "Though still subject to the Court's final approval at a later date, preliminary certification indicates at this stage that certification is sufficiently 'likely' to justify sending notice to settlement class members." *In re Flint Water Cases*, 499 F. Supp. 3d at 418. Ultimately, "[t]o be certified, a class must satisfy all four of the Rule 23(a) prerequisites—numerosity, commonality, typicality, and adequate representation—and fall within one of the three types of class actions listed in Rule 23(b)." *Branson*, 2025 WL 1908971, at *5 (quoting *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537 (6th Cir. 2012)). But "at th[e] preliminary stage, rigorous analysis under Rule 23(a)–(b) is not necessary." *Id.* (citation omitted).

The Court will likely be able to certify Plaintiffs' proposed class. Based on the record, the Rule 23(a) factors are satisfied. "There is no strict numerical test" for numerosity, *see id.* (quoting *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006)), but when the proposed class "includes thousands of individuals" the numerosity requirement is "usually" satisfied. *See*

*Daffin*, 458 F.3d at 552. Here, Plaintiffs represent that the proposed class includes 39,642 members. (D.N. 30-1, PageID.298 ¶ 3) This number is sufficient. *See Branson*, 2025 WL 1908971, at *5 (noting that "6,667 class members or more certainly suffices"); *Lott v. Louisville Metro Gov't*, No. 3:19-CV-271-RGJ, 2021 WL 1031008, at *10 (W.D. Ky. Mar. 17, 2021) ("[I]t generally is accepted that a class of 40 or more members is sufficient to satisfy the numerosity requirement." (alteration in original) (quoting *Garner Props. & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 622 (E.D. Mich. 2020))).

"Commonality requires a common contention that, if resolved, would resolve claims of all class members in one stroke." *Branson*, 2025 WL 1908971, at *5 (internal quotations omitted). Courts in this district have found commonality in data-breach litigation where class members' data was compromised in the same incident. *See Savidge v. Pharm-Save*, 727 F. Supp. 3d 661, 697–99 (W.D. Ky. 2024); *Bowen v. Paxton Media Grp.*, No. 5:21-CV-143-GNS, 2024 WL 1446468, at *4–5 (W.D. Ky. Apr. 3, 2024). As Plaintiffs note, this action involves several issues common to all class members, including

> whether [Southern Graphics] had a duty to use reasonable care in safeguarding Plaintiffs' and Settlement Class Members' Private Information; whether [Southern Graphics] failed to implement and maintain reasonable security practices appropriate to the nature and scope of the Private Information compromised; whether [Southern Graphics] was negligent in securing Private Information; whether [Southern Graphics] breached contract promises to safeguard Private Information; whether [Southern Graphics'] notice of the Data Incident was reasonable; the proper damages measure; and whether Plaintiffs and the Settlement Class are entitled to damages and/or injunctive relief.

(D.N. 30, PageID.269) Commonality is thus likely satisfied here.[8] *See Branson*, 2025 WL 1908971, at *5.

[8] At the final-approval stage, Plaintiffs' discussion of commonality should address and identify the elements of each cause of action. *See Speerly v. Gen. Motors, LLC*, 143 F.4th 306, 316–18 (6th Cir. 2025).

The typicality requirement asks whether the class representatives' claims "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members, and if [their] claims are based on the same legal theory." *Karpik v. Huntington Bancshares Inc.*, No. 2:17-cv-1153, 2021 WL 757123, at *11 (S.D. Ohio Feb. 18, 2021) (quoting *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007)). Typicality "tend[s] to merge" with the commonality requirement and is also generally satisfied in data-breach litigation, even where the economic injuries class members suffered due to the exposure of their data may differ. *See Savidge*, 727 F. Supp. 3d at 700 ("[I]n similar data breach cases, courts have determined that individualized inquiries into the amount of damages for each class member do[] not defeat typicality . . . ." (citing *In re Sonic Corp.*, No. 20-0305, 2021 WL 6694843, at *3 (6th Cir. Aug. 24, 2021))); *Bowen*, 2024 WL 1446468, at *5. Here, the class representatives' claims are based on the same legal theories as those of other class members and arise from the same course of conduct: Southern Graphics' handling of their data. (*See generally* D.N. 28) Thus, the typicality requirement is likely satisfied.

"There are two criteria for determining whether the representation of the class will be adequate: 1) [t]he representative[s] must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Branson*, 2025 WL 1908971, at *5 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 524–25 (6th Cir. 1976)). Plaintiffs are all victims of the Southern Graphics data breach. (*See* D.N. 28, PageID.192 ¶ 7) And as discussed previously, Plaintiffs and class counsel have adequately represented the class in this case and there is no indication that they would not continue to pursue the interests of the class. *See Carter*, 2025 WL 899854, at *3; *see also Branson*, 2025 WL 1908971, at *5.

Additionally, Plaintiffs have sufficiently demonstrated that the proposed class "fall[s] within one of the three types of class actions listed in Rule 23(b)." *See Branson*, 2025 WL 1908971, at *5. Plaintiffs assert that preliminary certification is warranted under Rule 23(b)(3). (D.N. 30, PageID.272) Certification under Rule 23(b)(3) is appropriate when

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). "The predominance requirement of Fed. R. Civ. P. 23(b)(3) is like Fed. R. Civ. P. 23(a)(2)'s commonality requirement 'in that both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that common issues predominate over individual issues.'" *Bowen*, 2024 WL 1446468, at *6 (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1084 (6th Cir. 1996)). "The predominance requirement is satisfied unless it is clear that individual issues will overwhelm the common questions and render the class action valueless." *Id.* (quoting *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 307 (E.D. Mich. 2001)). Courts in this district have generally found predominance in data-breach litigation even when the class members suffered varying degrees of harm. *See Savidge*, 727 F. Supp. 3d at 702–07; *Bowen*, 2024 WL 1446468, at *6–7. Because Plaintiffs have identified common issues central to this case, including "whether [Southern Graphics] was required, and failed, to adequately protect the Settlement Class's Private Information" (D.N. 30, PageID.273), the predominance requirement is satisfied here. *See Bowen*, 2024 WL 1446468, at *6–7. As to

superiority, "class action litigation is . . . superior in light of the size of the proposed class and the relatively small amount in dispute per class member." *Lurry v. Pharmerica Corp.*, No. 3:23-CV-297-RGJ, 2026 WL 87121, at *8 (W.D. Ky. Jan. 12, 2026); *see Savidge*, 727 F. Supp. 3d at 708 ("Given the size of the claims, individual class members have virtually no interest in individually controlling the prosecution of separate actions." (quotation omitted)). Thus, certification under Rule 23(b)(3) is likely.

**G. Adequacy of the Proposed Notice**

Rule 23(b)(3) class actions require "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Specifically, Rule 23(b)(3) notices must clearly and concisely state in plain, easily understood language:

> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The notice proposed by the parties satisfies Rule 23(c)(2)(B)'s requirements for "the best notice that is practicable under the circumstances." The proposed postcard notice explains the nature of the lawsuit, defines the settlement class, explains how to submit a claim form, directs class members to the website for instructions on requesting exclusion from the class or objecting, describes the binding effect of an approved settlement, and summarizes the terms of the proposed settlement. (*See* D.N. 30-1, PageID.329–32; *see also id.*, PageID.334–43 (long-form notice)) The proposed postcard notice will be sent via first-class U.S. mail and will be accessible

in long form via a settlement website.[9] (D.N. 30-1, PageID.307–08 ¶¶ 80–83) This method of notice is satisfactory under Rule 23. *See* Fed. R. Civ. P. 23(c)(2)(B) (explaining that for Rule 23(b)(3) classes, "[t]he notice may be by one or more of the following: United States mail, electronic means, or other appropriate means"); *Macy*, 2019 WL 6684522, at *7 (approving summary notice via postcard that contained directions to access long-form notice). Class counsel also stated during the hearing that the long-form notice will be amended for specificity to include the released-claims language from the proposed settlement agreement. *Compare* (D.N. 30-1, PageID.336, 338), *with In re OnePoint*, 2026 WL 74403, at *12 ("[T]here is no explanation of what the legal claims are, or why the Defendant denies them." (citation modified)).

**III.**

For the reasons set out above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) Plaintiff's unopposed motion for preliminary settlement approval (D.N. 30) is **GRANTED**. The Court preliminarily **APPROVES** the settlement agreement between the parties. This approval is subject to further consideration at a final approval hearing, following proper notice to the members of the settlement class of the opportunity to object to its terms.

(2) Pursuant to Federal Rule of Civil Procedure 23(e), the Court preliminarily **CERTIFIES** the following class for settlement purposes:

> All living individuals in the United States whose Private Information was potentially compromised in the Data Incident, including all individuals who were mailed notice of the Data Incident from Defendant.

(D.N. 30-1, PageID.298)

---

[9] The settlement administrator will also provide a toll-free telephone number, email, and mailing address to contact the administrator about the notice and settlement. (*See* D.N. 30, PageID.263)

(3) The Court preliminarily **APPOINTS** Plaintiffs Shane Davis, Linda Greenwood, James Palmer, Richard Bust, and Dara Rojowski as Class Representatives for the Settlement Class.

(4) The Court preliminarily **APPOINTS** Jeff Ostrow of Kopelowitz Ostrow P.A.; Mariya Weekes of Milberg PLLC; William B. Federman of Federman & Sherwood; Raina Borrelli of Strauss Borrelli PLLC; and Grayson Wells of Stranch, Jennings & Garvey, PLLC as Class Counsel for the Settlement Class.

(5) The Court **APPROVES** the appointment of Simpluris, Inc. as Settlement Administrator.

(6) The Court **APPROVES** the notice and notice method described in the settlement agreement with the addition of the released-claims language discussed above. Notice shall proceed in accordance with the procedures and methodologies described in the settlement agreement.

(7) This matter is **SET** for a final fairness hearing on **November 18, 2026, at 1:30 p.m.** at the U.S. Courthouse in Louisville, Kentucky.

(8) Members of the settlement class who wish to object to the proposed settlement agreement must submit a written statement of objection that comports with the procedures outlined in the settlement agreement. Any objections must be filed at least **thirty (30) days prior to the final fairness hearing**. Any responses to objections must be filed at least **seven (7) days prior to the final fairness hearing**. There shall be no replies.

(9) Any motions for attorney fees, expenses, and class representative service awards **SHALL** be filed at least **thirty (30) days prior to the final fairness hearing**. In addition, any

briefs or other documentation in support of final approval must be filed at least **fourteen (14) days prior to the final approval hearing**.

August 17, 2026

David J. Hale, Chief Judge
United States District Court