**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT LOUISVILLE**

**IN RE: SOUTHERN GRAPHICS, INC. DATA BREACH LITIGATION**

Master File No. 3:25-cv-563-DJH-CHL

This Document Relates To: All Actions

* * * * * * * * * * * *

# PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND INTEGRATED MEMORANDUM OF LAW IN SUPPORT

Come now the Plaintiffs Shane Davis, Linda Greenwood, James Palmer, Richard Bust, and Dara Rojowski ("Plaintiffs" or "Class Representatives"), by the undersigned Class Counsel, and respectfully move the Court for final approval of the Class Action Settlement with Defendant, Southern Graphics, Inc. d/b/a SGS & Co. ("Defendant" or "Southern Graphics"),[1] as set forth in the Parties' Class Action Settlement Agreement ("Settlement" or "SA"),[2] pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, stating as follows:

## I. INTRODUCTION

On August 17, 2026, this Court preliminarily approved the Settlement between Plaintiffs, individually and on behalf of all others similarly situated, and Defendant. *See* Order Granting Preliminary Approval ("Prelim. App. Ord.") [DN 36]. Now, Simpluris, Inc. ("Simpluris" or the "Settlement Administrator") has implemented the Court-approved Notice Program, and direct notice has reached approximately **96.25%** of the Settlement Class. *See* **Exhibit 1**, Declaration of Julie Meichsner Regarding Notice and Claims Administration, of Simpluris, Inc. ("Admin.

[1]Southern Graphics, Inc. is now Southern Graphics LLC.
[2]All capitalized terms herein not separately defined shall have the same meaning ascribed to them in the Settlement Agreement. The Settlement Agreement and its exhibits were filed as **Exhibit A** to Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement. [DN 30-1].

Decl."), ¶ 11. The reaction from the Settlement Class has been overwhelmingly positive, which is not surprising given the strengths of the Settlement. Specifically, of the approximately **30,688** Settlement Class Members, none have requested exclusion and no Class Member has submitted an objection. *Id.* ¶¶ 6, 15-18. The Settlement—which provides a $750,000.00 non-reversionary common fund for the payment of Documented Losses or, in the alternative, a *pro rata* cash payment, together with two (2) years of CyEx credit monitoring—is an excellent result for the Settlement Class, and the Court should grant final approval.

## II. SUMMARY OF LITIGATION

In the interest of brevity and efficiency, Plaintiffs incorporate by reference the factual and procedural background set forth in their Unopposed Motion for Preliminary Approval of Class Action Settlement [DN 30]. In brief, Plaintiffs alleged that in December 2024, Southern Graphics detected unauthorized access to certain of its information technology systems (the "Data Incident"), and subsequently determined that the Private Information of approximately 39,642 of its current and former employees and employee family members may have been impacted. SA ¶¶ 3-4, 29. Beginning in September 2025, five putative class actions arising from the Data Incident were filed in this Court, which were consolidated into this Action by order of the Court on November 25, 2025, at which time the Court also appointed Interim Co-Lead Counsel. [DN 27].[3] After exchanging informal discovery and engaging in vigorous arm's-length negotiations, the Parties reached an agreement in principle, Plaintiffs filed the Consolidated Class Action Complaint on December 22, 2025 [DN 28], and the Parties executed the Settlement Agreement on December

[3] *Davis v. Southern Graphics, Inc. d/b/a SGS & Co.*, 3:25-cv-563; *Greenwood v. Southern Graphics, Inc. d/b/a SGS & Co.*, 3:25-cv-610; *Palmer v. Southern Graphics, Inc. d/b/a SGS & Co.*, 3:25-cv-613; *Bust v. Southern Graphics, Inc. d/b/a SGS & Co.*, 3:25-cv-617; and *Rojowski v. Southern Graphics, Inc. d/b/a SGS & Co.*, 3:25-cv-657.

30, 2025. Joint Decl. ¶¶ 3-8.[4] Since Preliminary Approval was granted, Court-approved notice of the Settlement has been disseminated by the Settlement Administrator and the response from the Settlement Class has been overwhelmingly positive. Plaintiffs now seek final approval of the Settlement. As follows, the Court should grant this motion as the Settlement amply satisfies all factors under the applicable law.

## III. THE SETTLEMENT TERMS

### A. The Settlement Class

The Settlement will provide substantial relief for the Settlement Class (or, the "Class"), defined as "all living individuals in the United States whose Private Information was potentially compromised in the Data Incident, including all individuals who were mailed notice of the Data Incident from Defendant." SA ¶ 60. Excluded from the Settlement Class are (a) all persons who are directors and officers of Defendant, or its respective subsidiaries and affiliated companies; (b) governmental entities; and (c) the Judge(s) assigned to the Action, the Judge's immediate family, and Court staff. *Id.*

As follows, the Settlement Class consists of approximately **30,688** individuals. While Defendants' Counsel provided Simpluris with a data file containing 38,797 Settlement Class Members' names, mailing addresses and email addresses, there were Settlement Class Members listed multiple times and there was incomplete information in the data file provided to Simpluris. Accordingly, the Settlement Administrator calculated the final Class List, confirmed to contain 30,688 Settlement Class Members. Admin. Decl. ¶ 6.

### B. Settlement Benefits

The Settlement creates a non-reversionary common fund of $750,000.00 (the "Settlement

[4] "Joint Decl." refers to the Joint Declaration in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement, filed as **Exhibit B** thereto. [DN 30-2].

Fund"). SA ¶¶ 63, 66-68; Joint Decl. ¶ 9. The Settlement Fund shall be used to pay (1) all Settlement Class Member Benefits to Settlement Class Members who submit Valid Claims; (2) all Settlement Administration Costs; (3) any attorneys' fees and costs awarded by the Court to Class Counsel; and (4) any Service Awards to the Class Representatives approved by the Court. *Id.*

***First***, Settlement Class Members may submit a claim for Documented Losses up to a maximum of $3,500.00 per Settlement Class Member ("Cash Payment A – Documented Losses"). SA ¶ 72(a). To receive this benefit, Settlement Class Members need only submit a completed Claim Form attesting under penalty of perjury to their Documented Losses, along with reasonable documentation supporting those losses. *Id.* ***Second***, in the alternative to Cash Payment A, Settlement Class Members may instead elect to receive a *pro rata* cash payment from the Net Settlement Fund ("Cash Payment B – Alternate Cash"). SA ¶ 72(b). Settlement Class Members need not provide any proof or explanation to claim this payment, and may do so merely by selecting the benefit on the Claim Form and timely submitting it to the Settlement Administrator. *Id.* ***Third***, **in addition** to either Cash Payment A **or** Cash Payment B, Settlement Class Members may claim two (2) years of one-bureau credit monitoring services provided by CyEx. SA ¶ 72(c).

Settlement Class Members have until fifteen (15) days before the initial scheduled Final Approval Hearing—here, November 3, 2026—to submit a Claim Form. SA ¶ 21; Joint Decl. ¶ 11.

Finally, the Settlement is truly non-reversionary. After Settlement Class Members who submitted Valid Claims for Cash Payments are given an opportunity to cash their checks, any remaining funds in the Settlement Fund shall be distributed to a *cy pres* recipient to be agreed upon by the Parties, which shall have no affiliation with the Parties or their counsel and must be reasonably related to privacy or data protection, or the promotion of the same through training and awareness programs. SA ¶ 72; Joint Decl. ¶ 10. The Parties have agreed upon the Legal Aid

Society, in Louisville, Kentucky as the *cy pres* recipient.

### C. Notice and Administration Expenses

The costs of providing Notice to the Settlement Class and other Settlement Administration Costs have been and will be paid from the Settlement Fund. SA ¶¶ 63, 66-68. Simpluris' total costs for services in connection with the administration of this Settlement, including fees incurred and anticipated future costs for completion of the administration, is $49,274. Admin. Decl. ¶ 19.

### D. Attorneys' Fees, Costs, and Service Awards

Pursuant to the Settlement, Class Counsel have separately moved the Court for an award of attorneys' fees of up to one-third of the Settlement Fund, or $250,000.00, plus reimbursement of reasonable litigation costs, and for Service Awards of $2,500.00 to each of the five Class Representatives, totaling $12,500.00, all to be paid from the Settlement Fund. SA ¶¶ 104-105; *see* Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards, [DN 50]. The Settlement is not contingent on the Court's approval of the requested attorneys' fees, costs, or Service Awards.

### E. Release

In exchange for the foregoing benefits, all Settlement Class Members who did not timely and validly opt out will fully and finally release Defendant and the other Released Parties from any and all past, present, and future claims and causes of action related to the Data Incident, as fully detailed in Section XIII of the Settlement Agreement. SA ¶ 107.

## IV. THE NOTICE PROGRAM COMPORTS WITH DUE PROCESS

Before final approval can be granted, Due Process and Rule 23 require that the notice provided to the Settlement Class is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Notice "need only

be reasonably calculated . . . to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *UAW v. Gen. Motors Corp.*, 2006 WL 891151, at *33 (E.D. Mich. Mar. 31, 2006) (citation omitted). Notice must clearly state essential information regarding the settlement, including the nature of the action, terms of the settlement, and class members' options. *See* Fed. R. Civ. P. 23(c)(2)(B); *Dick v. Sprint Commc'ns Co. L.P.*, 297 F.R.D. 283, 292 (W.D. Ky. 2014). At its core, "[a]ll that the notice must do is fairly apprise the prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interest." *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.* ("*UAW*"), 497 F.3d 615, 630 (6th Cir. 2007).

Due Process does not require that every class member receive notice, and a notice plan is reasonable if it reaches at least 70% of the class. *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008); Fed. Judicial Ctr., Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide 3 (2010); *see also In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2009 WL 5184352, at *12 (W.D. Ky. Dec. 22, 2009) (finding notice plan to be "the best notice practicable" where combination of mail and publication notice reached 81.8% of the class). The Notice Program here meets this standard, as it provided direct notice to approximately 96.25% of the Settlement Class of 30,688 individuals. Admin. Decl. ¶ 11.

Previously, in its Memorandum and Order [DN 36] This Court approved the proposed Notice Program, finding it met the requirements of Rule 23. *See* Prelim. App. Ord., pg. 18. The Notice Program has now been fully carried out by the Settlement Administrator, Simpluris.

Pursuant to the Settlement, on January 22, 2026, Defendants' Counsel provided Simpluris with a data file containing 38,797 Settlement Class Members' names, mailing addresses and email

addresses. There were Settlement Class Members listed multiple times and incomplete information in the data file provided to Simpluris. The final Class List was confirmed to contain 30,688 Settlement Class Members. SA ¶ 78; Admin. Decl. ¶ 6. Upon receipt of the Class List, Simpluris "scrubbed" the data to ensure it was in proper format for distributing the Postcard Notice via U.S. Mail and ran the email addresses through a validity checker. Simpluris also compared the address data against the United States Postal Service ("USPS") National Change of Address ("NCOA") database and updated the data to a Settlement-specific database with the changes received from NCOA. *Id.* ¶ 7.

On September 8, 2026, Simpluris caused the Postcard Notice via first-class U.S. Mail to 30,677 Settlement Class Members with a valid mailing address. SA ¶¶ 48, 78; Admin. Decl. ¶ 8; *see* Admin. Decl. Ex. B. The Postcard Notice advised Settlement Class Members of their right to request exclusion from the Settlement, submit a claim, object to the Settlement, or do nothing, and the implications of each such action. The Postcard Notice advised Settlement Class Members of applicable deadlines and other events, including the Final Approval Hearing, and a dedicated email address and postal mailing address where Settlement Class Members could obtain additional information or ask questions.

As of November 3, 2026, 6,889 Postcard Notices have been returned by USPS. For the mailings returned with or without a forwarding address, Simpluris performed an advanced address search (i.e. skip trace) on these addresses by using Accurint, a reputable research tool owned by LexisNexis. Simpluris used the Class Members' name and previous address to locate a more current address. Of the 6,889 returned Postcard Notices, 5,739 Postcard Notices were re-mailed to either a newfound address or with forwarding addresses provided by USPS, and 1,150 Postcard Notices were determined to be undeliverable because no updated address was available. Admin

Decl. ¶ 10.

Based on this information, initial Notice was successfully delivered to 29,527 Settlement Class Members, representing 96.25% of Settlement Class Members. *Id.* ¶ 11.

The Postcard Notice also directed Settlement Class Members to the Settlement Website, www.SouthernGraphicsDataSettlement.com; that includes, among other things, important dates, deadlines, and Settlement-related documents, including the Settlement Agreement and Release, the Long Form Notice, the Complaint, the Preliminary Approval Order, and a downloadable version of the Notice of Class Action Settlement, and Claim Form. The Settlement Website also allows Class Members to log in to submit a Claim Form electronically. The Settlement Website has been available to the public since September 4, 2026. As of November 3, 2026, the website has been visited by 3,725 unique visitors with 10,400 page views. *Id.* ¶ 12.

As a result of this comprehensive Notice Program, as of November 3, 2026, Simpluris has received 1,684 Claim Form submissions via Mail and the Settlement Website—which equates to a **5.49% claims rate**. However, these Claim Form submissions are still being evaluated for completeness, including the full assessment of each Claim's validity, award amount, and a review for duplicate and fraudulent submissions. *Id.* ¶ 14.

## V. THE SETTLEMENT CLASS MEETS THE REQUIREMENTS OF FED. R. CIV. P. 23 AND SHOULD BE FINALLY CERTIFIED

### A. Rule 23(a) Requirements Are Met for Settlement Purposes

***Numerosity and Ascertainability.*** The first prerequisite is that the "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "In most cases, a class in excess of forty members will do." *Curry v. SBC Commc'ns, Inc.*, 250 F.R.D. 301, 310 (E.D. Mich. 2008). The Settlement Class includes approximately 30,688 individuals, *see supra*, satisfying the numerosity requirement for purposes of settlement. The Class is also ascertainable, as Southern

Graphics knows the identity of each of these Settlement Class Members, its current and former employees and their family members. *See Kinder v. Nw. Bank*, 278 F.R.D. 176, 182 (W.D. Mich. 2011) (class must be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member").

***Commonality.*** Rule 23(a)(2) is satisfied when questions of law or fact are common to the class, the resolution of which will bring a class-wide resolution. Fed. R. Civ. P. 23(a)(2). It may be indicated when the claims all "depend upon a common contention," with a single common question sufficing. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The common contention must be capable of class-wide resolution, and the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Here, Plaintiffs' claims turn on the adequacy of Southern Graphics' data security measures, including whether Defendant had a duty to use reasonable care in safeguarding Plaintiffs' and the Class's Private Information; whether Defendant failed to implement and maintain reasonable security procedures and practices; whether Defendant's notice of the Data Incident was reasonable; and whether the Data Incident caused Plaintiffs and the Class injuries. Cons. Compl. ¶ 169. Evidence to resolve those questions does not vary among Settlement Class Members, and so can be fairly resolved, for purposes of settlement, for the entire Class at once. *See In re Countrywide*, 2009 WL 5184352, at *3.

***Typicality.*** A class representative's claims must be typical of those of other class members. Fed. R. Civ. P. 23(a)(3). Plaintiffs satisfy the typicality requirement where their "claim arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007). Typicality assesses "whether a sufficient relationship exists between the

injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998). The claims need not be identical; rather, they need only "arise from the same course of conduct." *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir. 1997).

Here, Plaintiffs allege that each Settlement Class Member had their Private Information potentially compromised as a result of the Data Incident, and was thus impacted by the same allegedly inadequate data security that Plaintiffs allege harmed the rest of the Class. Thus, Plaintiffs' pursuit of their own claims necessarily advances the interests of the Class, satisfying the typicality requirement. *See In re Countrywide*, 2009 WL 5184352, at *3 (typicality satisfied "because all class members had their private information compromised, and their claims arise from the same course of uniform conduct of [the defendant]").

***Adequacy.*** Class representatives must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). "Class representatives are adequate when it appears that they will vigorously prosecute the interest of the class through qualified counsel . . . which usually will be the case if the representatives are part of the class and possess the same interest and suffer the same injury as the class members." *UAW*, 497 F.3d at 626. The preliminarily-approved Class Representatives have no conflicts with the Class, agreed to serve in a representative capacity, communicated diligently with their attorneys, gathered and produced relevant documents, and helped prepare the allegations in the Complaint. Joint Decl. ¶ 14. They are represented by attorneys experienced in class actions, including data breach cases, who have frequently been appointed lead class counsel in data breach cases and other class actions, and who have the resources necessary to prosecute this case. *Id.* ¶ 21. Class Counsel have devoted substantial resources to this action: investigating Plaintiffs' claims; consolidating the Related Actions; preparing the Consolidated

Class Action Complaint; obtaining and analyzing informal discovery regarding how the Data Incident occurred, the specific data elements impacted, the impacted individuals, and Defendant's financial condition; and, ultimately, negotiating a Settlement that provides meaningful relief for the Class in the face of substantial litigation risks. *Id.* ¶¶ 5, 8. Class Counsel have vigorously prosecuted this case and will work diligently on behalf of the Class throughout the administration process.

**B. Rule 23(b) Requirements Are Met for Purposes of Settlement**

After satisfying Rule 23(a), a plaintiff must also satisfy one of the three requirements of Rule 23(b) for a court to certify a class. Fed. R. Civ. P. 23(b); *Merenda v. VHS of Michigan, Inc.*, 296 F.R.D. 528, 536 (E.D. Mich. 2013). Plaintiffs seek certification under Rule 23(b)(3), which requires that (i) common questions of law and fact predominate over individualized ones, and that (ii) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). "A plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *Beattie*, 511 F.3d at 564. This requirement considers "the difficulties likely to be encountered in the management of a class action" and issues with individual litigation. *Id.*; *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) ("[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action[.]"). The Settlement Class satisfies these requirements.

***1. Common Questions of Law and Fact Predominate***

Predominance focuses on whether the defendant's alleged liability is common enough to warrant class-wide adjudication. *Amchem*, 521 U.S. at 623. The proposed class must be

"sufficiently cohesive to warrant adjudication by representation." *Id.* Though similar to the commonality requirement of Rule 23(a), Rule 23(b)(3) "contains the more stringent requirement that common issues predominate over individual issues." *Machesney v. Lar-Bev of Howell, Inc.*, 317 F.R.D. 47, 61 (E.D. Mich. 2016). Predominance is met if a single factual or legal question is "at the heart of the litigation." *See Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). Data breach cases present questions of law and fact central to liability that predominate over any individual issues. Whether Southern Graphics "violated the various laws alleged in the Complaint[] is a question that is common to all class members. The proof required focuses on Defendant's conduct, not on the conduct of individual class members." *In re Countrywide*, 2009 WL 5184352, at *6. Southern Graphics' alleged course of conduct was uniform across the Class, so the claims "will prevail or fail in unison." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 859 (6th Cir. 2013). Because class-wide determination of these issues will be the same for all, predominance is satisfied.

### ***2. A Class Action Is the Superior Method of Adjudication***

Certification of this suit as a class action is superior to other methods to fairly, adequately, and efficiently resolve the claims here. "The superiority requirement of Rule 23(b)(3) is met if the class action is a better way than individual litigation to adjudicate a claim." *Calloway v. Caraco Pharm. Labs., Ltd.*, 287 F.R.D. 402, 407-08 (E.D. Mich. 2012). Such is especially true in situations which "vindicat[e] the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Amchem*, 521 U.S. at 617. Adjudicating individual actions here is impracticable; the amount in dispute per person is too small given the complexity of the issues and the costs of document review, technical issues, and experts. Individual damages are insufficient to allow such actions—at least not with the aid of adequate counsel. Such

prosecution would delay resolution and may lead to inconsistent rulings.[5] Indeed, there is no indication that any Settlement Class Member has instituted an individual claim regarding the Data Incident outside of this consolidated Action. *See Ware v. CKF Enters., Inc.*, No. 5:19-cv-183, 2020 WL 2441415, at *10 (E.D. Ky. May 12, 2020). Thus, the Court should certify the Settlement Class pursuant to Rule 23(b)(3). Southern Graphics does not oppose class certification for settlement purposes only.

## VI. THE SETTLEMENT SHOULD BE FINALLY APPROVED

The Federal Rules of Civil Procedure require judicial approval of class action settlements. *Halliday v. Weltman, Weinberg & Reis Co., L.P.A.*, 2013 WL 692856, at *1 (E.D. Mich. Feb. 26, 2013) (citing Fed. R. Civ. P. 23(e)). At final approval, the ultimate issue is whether the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983). Courts within the Sixth Circuit recognize a strong "federal policy favoring settlement of class actions." *UAW*, 497 F.3d at 632 (citation omitted); *see also Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 830 (E.D. Mich. 2008).

Fed. R. Civ. P. 23(e)(2) provides factors for the Court to determine if a settlement is "fair, reasonable, and adequate." The Rule 23(e)(2) factors are whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be

---

[5] The Court need not consider trial manageability. *Amchem*, 521 U.S. at 620 ("with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems").

identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

In addition to these factors, the Sixth Circuit has laid out its own factors: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *UAW*, 497 F.3d at 631; *see also Wilson v. Anthem Health Plans of Kentucky, Inc.*, No. 3:14-cv-743, 2019 WL 6898662, at *3 (W.D. Ky. Dec. 18, 2019). As described below, each factor affirms the fairness, reasonableness, and adequacy of the Settlement, and supports final approval.

**A. The Rule 23(e)(2) Factors Weigh in Favor of Final Approval**

The Settlement easily satisfies the Rule 23(e)(2) factors. Data breach class action settlements are regularly approved in Kentucky federal court. *See Lurry v. Pharmerica Corp.*, No. 3:23-CV-297-RGJ, 2026 WL 87121 (W.D. Ky. Jan. 12, 2026); *In re CorrectCare Data Breach Litig.,* No. CV 5:22-319-DCR, 2024 WL 4211480 (E.D. Ky. Sept. 17, 2024). The same is true in Kentucky state court. *See Berthold, et al. v. Norton Healthcare, Inc., et al.*, Case No. 23-CI-003349 (Jefferson Co. Ky. Circuit Court); *In Re: Seven Counties Services, Inc. Data Breach Litigation,* Case No. 24-CI-007516 (Jefferson Co. Ky. Cir. Ct.).

**First**, as explained, Plaintiffs and Class Counsel have adequately represented the Class and secured an excellent result. *See supra* §§ I, V(A). **Second**, the Settlement was negotiated at arm's length among experienced counsel, after the Parties exchanged informal discovery sufficient to adequately assess the strengths and weaknesses of the case, including how the Data Incident occurred, who was involved, the specific data elements impacted, liability, damages, the impacted

individuals, and Defendant's financial condition. SA ¶ 8; Joint Decl. ¶¶ 7-10. Only after reaching agreement on the substantive relief for the Class did the Parties negotiate attorneys' fees and Service Awards. Joint Decl. ¶ 11. **Third**, the relief provided is clearly adequate when taking into account the factors listed in Rule 23(e)(2)(C). The Settlement provides a substantial recovery for the Settlement Class without the additional delay and uncertainty of litigation (*id.* ¶ 16); its method of distributing relief through a simple Claim Form is not unduly burdensome, yet deters fraudulent claims; the requested attorneys' fees of one-third of the Settlement Fund are consistent with awards approved in this Circuit, *see Ware*, 2020 WL 2441415, at *15; and there are no side agreements required to be identified under Rule 23(e)(3). Joint Decl. ¶ 25. **Fourth**, all Settlement Class Members are treated equitably. Each Settlement Class Member has the opportunity to make a claim for either (1) reimbursement of Documented Losses of up to $3,500.00, or (2) a *pro rata* Alternate Cash payment, as well as (3) two years of CyEx credit monitoring. Accordingly, all Settlement Class Members are treated equitably and have the same opportunity to participate in the Settlement.

### B. The Sixth Circuit's *UAW* Factors Weigh in Favor of Final Approval

#### *1. There Is No Risk of Fraud or Collusion (UAW Factor 1)*

The first *UAW* factor is "the risk of fraud or collusion." *UAW*, 497 F.3d at 631. "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Leonhardt*, 581 F. Supp. 2d at 838; *see also In re OnePoint Patient Care, LLC, Data Breach Litig.*, No. 3:24-CV-649-RGJ, 2026 WL 74403, at *5 (W.D. Ky. Jan. 9, 2026). Where, as here, a settlement was reached through arm's-length negotiations among experienced counsel, there is no evidence of fraud or collusion. *See, e.g.*, *Sheick v. Auto. Component Carrier, LLC*, 2010 WL 3070130, at *13 (E.D. Mich. Aug. 2, 2010) ("[N]egotiations of the Settlement Agreement

were conducted at arm's-length by adversarial parties and experienced counsel, which itself is indicative of fairness, reasonableness, and adequacy."). Here, the Settlement was obtained only after protracted, adversarial negotiations following the exchange of substantive informal discovery, and the Parties did not negotiate attorneys' fees or Service Awards until after agreeing on the relief for the Class. Joint Decl. ¶ 11. This factor strongly supports approval.

#### 2. *Litigation Through Trial Would Be Complex, Costly, and Long (UAW Factor 2)*

The second *UAW* factor is "the complexity, expense and likely duration of the litigation." *UAW*, 497 F.3d at 631. Most class actions are inherently risky, and thus "[t]he obvious costs and uncertainty of such lengthy and complex litigation weigh in favor of settlement." *UAW*, 2006 WL 891151, at *17. "…[C]ourts in this circuit have recognized the substantial litigation risks associated with class actions in the context of data breach cases." *Lurry v. Pharmerica Corp.,* No. 3:23-CV-297-RGJ, 2026 WL 87121, at *5 (W.D. Ky. Jan. 12, 2026) citing *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2807, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky. This unsettled area of law often presents novel questions for courts. And of course, juries are always unpredictable."). As other courts echo, data breach cases in particular are especially risky, expensive, and complex. *See Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019).

This case is no exception—it is complex both on legal matters and on the significant technical issues that Class Counsel would have to navigate and explain through expensive experts to a lay jury. Joint Decl. ¶¶ 16-17. Absent settlement, Plaintiffs would have to survive a motion to dismiss, obtain and defend class certification, survive summary judgment, and prevail at trial and through any appeals, including a potential Rule 23(f) petition. Southern Graphics denies all liability and would vigorously oppose class certification. *Id.*

The Settlement, on the other hand, permits a prompt resolution of this Action on terms that are fair, reasonable, and adequate to the Class. This result has been accomplished years earlier than if the case proceeded to judgment through trial and/or appeal(s), and provides certainty, whereas litigation does not and could result in defeat for the Class on a motion to dismiss, on a motion for class certification, at summary judgment, at trial, or on appeal. Given that reality, "an early resolution is beneficial to the class and the defendant." *Peck v. Air Evac EMS, Inc.*, No. 5:18-cv-615, 2019 WL 3219150, at *7 (E.D. Ky. July 17, 2019). This *UAW* factor plainly weighs in favor of final approval.

### ***3. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (UAW Factor 3)***

The third *UAW* factor is "the amount of discovery engaged in by the parties." *UAW*, 497 F.3d at 631. "[T]he absence of formal discovery is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties." *Ditsworth v. P & Z Carolina Pizza*, No. 1:20-cv-00084, 2021 WL 2941985, at *3 (W.D. Ky. July 13, 2021) (citation omitted). Here, Southern Graphics informally provided Plaintiffs with the information they needed to evaluate the claims and defenses, including how the Data Incident occurred, the specific data elements impacted, the size and scope of the Class, damage-related issues, and Defendant's financial condition. Joint Decl. ¶ 8. Class Counsel's experience in similar matters, as well as the efforts made by counsel on both sides, confirm that they are sufficiently well apprised of the facts of this Action and their respective cases to make an intelligent analysis of the Settlement.

### ***4. Plaintiffs Face Real Risks if the Case Proceeded (UAW Factor 4)***

The fourth *UAW* factor is "the likelihood of success on the merits." *UAW*, 497 F.3d at 631. Success at trial is far from certain here. Had the case not settled, Southern Graphics would have

moved to dismiss the Consolidated Class Action Complaint, the outcome of which was by no means guaranteed. Joint Decl. ¶ 17. Even if Plaintiffs overcame that motion, Southern Graphics would have vigorously contested class certification and moved for summary judgment on various issues. *Id.* "Historically, data breach cases have experienced minimal success in moving for class certification." *Cheryl Gaston v. FabFitFun, Inc.*, No. 2:20-CV-09534, 2021 WL 6496734, at *3 (C.D. Cal. Dec. 9, 2021) (collecting cases). At the time of Settlement, the Court had not yet certified a class, and any such determination would only have been reached after lengthy discovery and exhaustive class certification briefing.

Even if the Court did certify a Rule 23 class, Southern Graphics would likely challenge certification and subsequently move to decertify, forcing additional rounds of briefing. Risk, expense, and delay permeate such a process. In Class Counsel's experience, these additional steps in litigation can take years to resolve. The Settlement eliminates this risk, expense, and delay and provides Settlement Class Members with prompt relief. This factor favors final approval.

#### ***5. Class Counsel and Class Representatives Support the Settlement (UAW Factor 5)***

The fifth *UAW* factor is "the opinions of class counsel and class representatives." *UAW*, 497 F.3d at 631. "The endorsement of the parties' counsel is entitled to significant weight and supports the fairness of the class settlement." *Green v. Platinum Restaurants Mid-Am. LLC*, No. 3:14-cv-439, 2022 WL 1240432, at *5 (W.D. Ky. Apr. 27, 2022) (quoting *UAW v. Ford Motor Co.*, No. 07-cv-14845, 2008 WL 4104329, at *26 (E.D. Mich. Aug. 29, 2008)).

Here, both Class Counsel and all Plaintiffs support the Settlement. Joint Decl. ¶ 21. They do so because, as explained, the Settlement is an excellent result for Settlement Class Members in light of the defenses likely to be raised by Southern Graphics. This *UAW* factor therefore also favors final approval.

### 6. *The Reaction of Absent Class Members Is Uniformly Positive (UAW Factor 6)*

The sixth *UAW* factor is "the reaction of absent class members." *UAW*, 497 F.3d at 631. In most class settlements, a small number of opt-outs and objections "are to be expected" and do not impact a settlement's fairness. *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003); *see also Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008) (inferring that most "class members had no qualms" with settlement where 79 out of 11,000 class members objected).

In the instant case, the deadline for Class Members to opt-out or object to the Settlement was October 19, 2026. Admin Decl. ¶¶ 15, 17. And here, no Settlement Class Member has requested exclusion, and no Settlement Class Member has filed an objection. Admin. Decl. ¶¶ 16, 18. This *UAW* factor therefore plainly weighs in favor of final approval. *See, e.g.*, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."); *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *4 (E.D.N.Y. Nov. 20, 2012) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication of fairness."). It is also noteworthy that none of the attorneys general and other governmental officials who received notification of the Settlement pursuant to the Class Action Fairness Act have filed objections. *See George v. Acad. Mortg. Corp.*, 369 F. Supp. 3d 1356, 1373 (N.D. Ga. 2019) ("Not one CAFA notice recipient objected to the settlement, which also weighs in favor of its approval here.").]

Moreover, the fact that zero Settlement Class Members have requested exclusion is a further indication of the Settlement's fairness. *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 600 (E.D. Mich. 2006) (collecting cases); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 235

(3d Cir. 2001) ("The vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of the Settlement."). The Settlement should be approved.

#### *7. The Settlement Serves the Public Interest (UAW Factor 7)*

The seventh and final *UAW* factor is the "public interest." *UAW*, 497 F.3d at 631. "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *In re Cardizem*, 218 F.R.D. at 530. Further, when individual class members seek a relatively small amount of damages, "economic reality dictates that [their] suit proceed as a class action or not at all." *Eisen*, 417 U.S. at 161. Society undoubtedly has a strong interest in incentivizing attorneys to bring complex litigation that is necessary to protect the privacy of individuals' most personal information. Here, it is virtually certain that no other case would be brought to pursue these claims on an individual basis, and class action litigation is the most realistic means of obtaining recovery on behalf of the entire Class. *See Ditsworth*, 2021 WL 2941985, at *4. This factor therefore supports final approval.

## VII. THE CLASS REPRESENTATIVES AND CLASS COUNSEL SHOULD RECEIVE FINAL APPOINTMENT

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B), (g)(4). In making this determination, courts consider: (1) proposed class counsel's work in identifying or investigating potential claims; (2) proposed counsel's experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) proposed class counsel's knowledge of the applicable law; and (4) proposed counsel's resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv); *see supra* § V(A); *see also* 4 Newberg and Rubenstein

on Class Actions § 13:48 (6th ed.).

As this Court recognized in appointing them as Interim Co-Lead Counsel [DN 27], and again in its Preliminary Approval Order [DN 30], Jeff Ostrow of Kopelowitz Ostrow P.A.; Mariya Weekes of Milberg, PLLC; William B. Federman of Federman & Sherwood; Raina Borrelli of Strauss Borrelli PLLC; and Grayson Wells of Stranch, Jennings & Garvey, PLLC have extensive experience in prosecuting data breach class actions and other complex class actions. Joint Decl. ¶¶ 21-22. Class Counsel have diligently investigated and prosecuted this case, dedicating substantial resources to it and successfully negotiating this Settlement. *See generally* SA. Thus, the Court should finally appoint Jeff Ostrow of Kopelowitz Ostrow P.A.; Mariya Weekes of Milberg, PLLC; William B. Federman of Federman & Sherwood; Raina Borrelli of Strauss Borrelli PLLC; and Grayson Wells of Stranch, Jennings & Garvey, PLLC as Class Counsel. For the reasons set forth above, *see supra* § V(A), the Court should also finally appoint Plaintiffs Shane Davis, Linda Greenwood, James Palmer, Richard Bust, and Dara Rojowski as Class Representatives.

## VIII. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant this Unopposed Motion for Final Approval of Class Action Settlement and enter the proposed Final Approval Order and Judgment submitted herewith: (1) finally certifying the Settlement Class for settlement purposes; (2) finally approving the Settlement as fair, reasonable, and adequate; (3) finding that the Notice Program satisfied Rule 23 and Due Process; (4) finally appointing Plaintiffs as Class Representatives and the above-named counsel as Class Counsel; (5) directing the Settlement Administrator to distribute Settlement Class Member Benefits in accordance with the Settlement Agreement; and (6) dismissing this Action with prejudice. Plaintiffs' request for attorneys' fees, costs, and Service Awards is addressed in their separately filed motion [DN 50].

Dated: November 4, 2026

Respectfully submitted,

/s/ Grayson Wells
Grayson Wells*
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
(615) 254-8801
gwells@stranchlaw.com

Jeff Ostrow*
**KOPELOWITZ OSTROW P.A.**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
(954) 525-4100
ostrow@kolawyers.com

Mariya Weekes*
**MILBERG PLLC**
333 SE 2nd Avenue, Suite 2000
Miami, Florida 33131
Telephone: (866) 252-0878
mweekes@milberg.com

Raina C. Borrelli*
**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611
(872) 263-1100
raina@straussborrelli.com

William B. Federman*
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Avenue
Oklahoma City, OK 73120
(405) 235-1560
wbf@federmanlaw.com

* *Admitted pro hac vice*

***Co-Lead Counsel for Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2026, a copy of the foregoing was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's CM/ECF system, which will automatically notify all counsel of record.

*/s/ Grayson Wells*
Grayson Wells